WILLIAM E. D. STOKES, Respondent, *v.* EDWARD S. STOKES, Appellant.

BURDEN OF PROVING DEFENSE — DEFENDANT DEMANDING AFFIRMATIVE. A defendant in an action on notes who pleads a tender of payment made on condition of the surrender of bonds held as collateral security, which has been refused by the plaintiff upon the ground that he held the bonds as security for other obligations as well as for the notes, has the burden of proving that the bonds are not held as security for any other purpose than the payment of the notes in suit, when that is the only issue made in the case and he has expressly demanded and has been given the affirmative.

*Stokes* v. *Stokes*, 11 Misc. Rep. 716, affirmed.

(Argued March 17, 1898; decided April 19, 1898.)

APPEAL from a judgment of the General Term of the late Superior Court of the city of New York, entered March 16, 1895, overruling defendant's exceptions, directed to be heard in the first instance at General Term, and ordering judgment in favor of the plaintiff upon the verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinions.

*James C. Carter* for appellant. If the plaintiff was entitled to hold the bonds only as security for the payment of the notes in suit, the counterclaim was established and the court erred in directing a verdict for the plaintiff. (*Halpin* v. *P. Ins. Co.*, 118 N. Y. 165; *Bailey* v. *County of Buchanan*, 115 N. Y. 297; *Cass* v. *Higenbotam*, 100 N. Y. 248; *Cutler* v. *J. G. Co.*, 43 Hun, 516; *Wheelock* v. *Tanner*, 39 N. Y. 481; *Kortright* v. *Cady*, 21 N. Y. 343; *E. F. Ins. Co.* v. *Norris*, 74 Hun, 527; Code Civ. Pro. § 544; *Thayer* v. *Manley*, 73 N. Y. 305; *Booth* v. *Powers*, 56 N. Y. 22; *Potter* v. *Merchants' Bank*, 28 N. Y. 641; *Decker* v. *Mathews*, 12 N. Y. 313; *Atkinson* v. *R. P. Co.*, 43 Hun, 173; 114 N. Y. 168.) Plaintiff's denial in his reply is a conjunctive denial that the bonds "were deposited with and accepted and are held by plaintiff solely" as security for the notes in suit. It is not a denial that the bonds were originally deposited with and accepted by the plaintiff solely as security for these notes or of any of the facts alleged in the answer as to the time and circumstances of their deposit or of the agreement under which they were received. (*Kay* v. *Whittaker*, 44 N.Y. 565; Bliss on Code Pleading, § 332.) The judgment in the action of *Edward S. Stokes* v. *William E. D. Stokes* was a conclusive adjudication that at the time of the tender the plaintiff herein had failed to perform the consideration of the agreement of August 18, 1891, and that for this reason it could not be enforced against the defendant. (*Stokes* v. *Stokes*, 148 N. Y. 708; Freeman on Judgments [4th ed.], § 248; *Smith* v. *Kernochen*, 7 How. [U. S.] 198; *Strang* v. *Moog*, 72 Ala. 460; *P. Bank* v. *Eberts*, 96 Mich.

396; *W. S. Bank* v. *Town of Solon,* 136 N. Y. 465; *Black-inton* v. *Blackinton,* 113 Mass. 231; *Parnell* v. *Hahn,* 61 Cal. 131; *Woodhouse* v. *Duncan,* 106 N. Y. 527; *Bigelow* v. *Winsor,* 1 Gray, 299; *Gove* v. *Lyford,* 44 N. H. 525.) As the plaintiff had failed to perform the consideration of the agreement, he was not entitled to retain the securities thereunder. (*Dunham* v. *Bower,* 77 N. Y. 76; *Gates* v. *Preston,* 41 N. Y. 113; *Blair* v. *Bartlett,* 75 N. Y. 150; *Gardner* v. *Buckbee,* 3 Cow. 120; *Bouchaud* v. *Dias,* 3 Den. 238; *W. S. Bank* v. *Town of Solon,* 136 N. Y. 465; *Pray* v. *Hegeman,* 98 N. Y. 358.) The bonds were recoverable by the defendant upon demand. (*Weaver* v. *Bentley,* 1 Caines, 47; *Wheeler* v. *Board,* 12 Johns. 363; *Griggs* v. *Austin,* 3 Pick. 20; *Raymond* v. *Bearnard,* 12 Johns. 274.) The contention that the 125 Hoffman House bonds were, or might have been, held by W. E. D. Stokes, apart from the agreement of August 18, 1891, as security not only for the four notes in suit, but also for other obligations upon which E. S. Stokes was at one time contingently liable, to wit, certain notes of C. H. Read, is without force. (*Stannard* v. *Hubbell,* 123 N. Y. 521; *House* v. *Lockwood,* 137 N. Y. 259.)

*Benjamin F. Tracy* for respondent. The defendant failed to prove the conversion of the 125 Hoffman House bonds. (Greenl. on Ev. §§ 636, 637; *Hayes* v. *Riddle,* 1 Sandf. 248; Addison on Torts [7th ed.], 502; *Heilman* v. *Lazarus,* 90 N. Y. 672; *Claflin* v. *Meyer,* 75 N. Y. 260, 263; *F. L. & T. Co.* v. *Siefke,* 144 N. Y. 354; *Whitlatch* v. *F. & C. Co.,* 149 N. Y. 45; *Lamb* v. *C. & A. R. R. & T. Co.,* 46 N. Y. 271; *Davis* v. *Jenney,* 1 Met. 221; *Simpson* v. *Davis,* 119 Mass. 269; *Perley* v. *Perley,* 144 Mass. 104.) The judgment in the action of Edward S. Stokes against W. E. D. Stokes did not adjudicate that Edward S. Stokes had the right of possession of the 125 Hoffman House bonds. (*Cromwell* v. *County of Sac,* 94 U. S. 351; *Krekeler* v. *Ritter,* 62 N. Y. 372; *Springer* v. *Bien,* 128 N. Y. 99; *Stannard* v. *Hubbell,* 123 N. Y. 521; *House* v. *Lockwood,* 137 N. Y. 259; *Lance* v.

*Shaughnessy*, 86 Hun, 411; *Campbell* v. *Butts*, 3 N. Y. 173; *Burdick* v. *Post*, 12 Barb. 168; 6 N. Y. 522; *Belden* v. *State*, 103 N. Y. 1; *Campbell* v. *Consalus*, 25 N. Y. 613.) The judgment in the action of Edward S. Stokes against W. E. D. Stokes adjudicated that Edward S. Stokes had not the right of possession of the 125 bonds and could not maintain conversion therefor. (*De Witt* v. *Chandler*, 11 Abb. Pr. 459; Code Civ. Pro. § 1209.) The entire consideration of the contract of August 18, 1891, never failed. (*Van Blarcom* v. *B. Bank*, 9 Bosw. 532; Schouler on Bailment, §§ 178, 181; Story on Bailment, § 300; *Coddington* v. *Bay*, 20 Johns. 637; *Duncomb* v. *N. Y., H. & N. R. R. Co.*, 84 N. Y. 190; *Eichelberg* v. *Murdock*, 10 Md. 373; Bishop on Cont. §§ 81, 101; *O. P. R. R. Co.* v. *Forrest*, 128 N. Y. 83; *Maxwell* v. *Graves*, 59 Iowa, 613.)

HAIGHT, J.   This action was brought to recover the amount of four promissory notes, made by the defendant and payable to the order of the plaintiff.   The answer herein admitted the making of the notes set forth in the complaint, and that they were due and unpaid.   It then alleged, for a first defense, that, on November 15th, 1892, the defendant duly tendered to the plaintiff the sum of $37,500, the amount of the promissory notes, with interest and costs, upon condition that the plaintiff should surrender to the defendant certain securities deposited with him by the defendant as collateral to the notes; that the plaintiff declined to accept the tender, and refused to deliver the securities, and that the defendant was, and always has been, ready to pay the notes on the delivery of such securities.

For a second defense and by way of counterclaim, it was alleged in the answer that, at the time of the execution of the notes in question, the defendant deposited with the plaintiff, as security therefor, one hundred and twenty-five of the first mortgage bonds of the Hoffman House Corporation, of the actual and par value of $125,000, and thirty bonds of the United Lines Telegraph Company, of the actual and par value of $30,000; that such bonds were accepted and held by the

plaintiff as collateral security for the payment of the notes and for no other purpose; that, on the 15th day of November, 1892, the defendant tendered to the plaintiff $37,500, the amount of the notes, with interest and costs, upon the express condition that the plaintiff should surrender to the defendant the one hundred and fifty-five bonds so held by him as collateral security; that the plaintiff declined the tender and refused to deliver over the bonds, and then and there converted the same to his own use; that the bonds were worth the sum of $155,000, and judgment was demanded for the amount thereof, less the amount of the notes, with interest and costs. The plaintiff replied by denying that the one hundred and fifty-five bonds were deposited with him solely as collateral security for the payment of the promissory notes described in the complaint, and alleged that the one hundred and twenty-five Hoffman House bonds had come into his possession prior to August 24th, 1891, on which day the parties entered into a written contract, dated on the 18th day of August, 1891, in which it was, among other things, agreed that, "sixthly, and as security for these guarantees, for a loan of about thirty-two thousand dollars and for any obligation of said Edward S. Stokes to said William E. D. Stokes, connected with said Read, and against any foreclosure of the said mortgage, said Edward S. Stokes has deposited with William E. D. Stokes bonds of said Hoffman House to the par value of $150,000."

At that time one hundred and twenty-five thousand dollars of the Hoffman House bonds had been deposited with William E. D. Stokes, leaving twenty-five thousand dollars par value of said bonds to be thereafter deposited.

In a former action between the same parties, W. E. D. Stokes demanded judgment that Edward S. Stokes specifically perform the contract of August 18th, 1891, by depositing with him twenty-five thousand dollars, par value of the Hoffman House Corporation bonds, in addition to that which had been theretofore deposited as collateral security for the obligations undertaken under the provisions of the contract, in which action it was found, as a fact, that, prior to the 18th of August,

74

1891, the defendant was indebted to the plaintiff upon four promissory notes, aggregating thirty-two thousand dollars, and that he was also indirectly liable to the plaintiff upon a note for $10,000, made by one Cassius H. Read and indorsed by the defendant, and on another note for $15,000, made by Cassius H. Read, and guaranteed by the defendant. The judgment roll in that action was introduced in evidence upon the trial of this action. At the close of the evidence the court directed a verdict in favor of the plaintiff for $39,445.68.

The allegations of the complaint having been admitted in the answer, the only issue tendered by the pleadings was as to whether the bonds were held as collateral security for any other purpose than the payment of the notes in suit. Upon this issue the defendant demanded, and was given, the affimative. It is now said he was not bound to prove a negative. But there was no other issue, and on that he had demanded the affirmative. The duty then devolved upon him of establishing his defense or counterclaim. The tender having been made by him upon the condition that the plaintiff should surrender the bonds, the burden rested upon the defendant of showing that the bonds were held as collateral security for the payment of the notes in suit, and for no other purpose.

In the case of *Lamb* v. *Camden & Amboy R. R. & T. Co.* (46 N. Y. 271, 279) GROVER, J., in delivering the opinion of the court, said: "It sometimes occurs, in the progress of a trial, that a party holding the affirmative of the issue, and consequently bound to prove it, introduces evidence, which uncontradicted, proves the fact alleged by him. It has, in such cases, frequently been said, that the burden of proof was changed to the other side; but it was never intended thereby that the party bound to prove the fact was relieved from this; and that the other party, to entitle him to a verdict, was required to satisfy the jury that the fact was not as alleged by his adversary. In such cases, the party holding the affirmative is still bound to satisfy the jury, affirmatively, of the truth of the fact alleged by him, or he is not entitled to a verdict." (See, also, *Heilman* v. *Lazarus*, 90 N. Y. 672; *Olaf-*

*lin* v. *Meyer*, 75 N. Y. 260, 263; *Farmers' Loan and Trust Co.* v. *Siefke*, 144 N. Y. 354, 359; *Whitlatch* v. *Fidelity and Casualty Co.*, 149 N. Y. 45.)

The defendant took the stand in his own behalf and testified that " when the first three notes were given, I deposited with plaintiff, as collateral thereto, one hundred thousand dollars of the Hoffman House Corporation bonds and thirty thousand dollars of the United Lines Telegraph bonds." He also testified that when he gave the other note, or some time between May and August, he deposited with the plaintiff twenty-five thousand dollars of the Hoffman House bonds, in addition to those he had before deposited, so that the plaintiff had one hundred and twenty-five thousand dollars of the Hoffman House bonds and thirty thousand dollars of the United Lines Telegraph bonds as against these loans. It will here be observed that the defendant has neglected to state that the bonds were not deposited for other purposes as well as for the loans made.

The next bit of evidence introduced was the contract between the plaintiff and the defendant, dated the 18th day of August, 1891. The defendant was then asked the following question by his own counsel : " Were those one hundred and twenty-five thousand dollars worth of bonds deposited by you with the plaintiff as collateral for any other debt, or for any other purpose, than for those notes and whatever is stated in this agreement ? " The witness answered : " I would like to premise my answer somewhat by explaining. Those bonds were deposited, as I previously stated, previous to the agreement of August 18th, 1891." His counsel then repeated the question and he answered : " I allowed them to remain with the plaintiff for that purpose, and for no other purpose." The purpose specified in the question was for the notes in suit and " whatever is stated in the agreement." Upon referring to the agreement we find that the bonds were held as security, not only for the payment of the notes, but for any obligation of Edward S. Stokes to W. E. D. Stokes, connected with Read and as against any foreclosure of the mortgage. As we have

already seen, the defendant was liable to the plaintiff upon two notes, made by Cassius H. Read, amounting to twenty-five thousand dollars, which had been indorsed or guaranteed by the defendant. This is all the evidence given upon the subject.

We think the defendant failed to show that the bonds were held by the plaintiff as collateral for the payment of the notes, and *for no other purpose*, and that he consequently failed to establish his defense or counterclaim.

It was contended upon the argument that the determination of the former action should control the disposition of this case. In that case, as we have seen, specific performance of the contract was sought, which required Edward S. Stokes to deliver to William E. D. Stokes an additional $25,000 par value of the Hoffman House bonds as further collateral security for the obligations mentioned in the contract. In that case it appeared that one of the chief objects which the parties sought to accomplish was the purchase of the Read stock, so that the parties, William and Edward, could together be the owners of the whole stock of the Hoffman House Corporation, and as such owners could operate the Hoffman House as a hotel. After the contract had been executed it was found that the Read stock could not be purchased, and consequently the main purpose and consideration of the contract failed. It was under these circumstances that we refused to compel specific performance. (*Stokes* v. *Stokes,* 148 N. Y. 708.) It is possible that, owing to the failure of the principal part of the consideration of the contract, it should be held to be abrogated as a whole, a question which we do not now determine ; but if we should so treat the contract, it would not affect the question under consideration in this case, or relieve the defendant of the burden assumed by him when he attempted to prove his defense or counterclaim. The loans made upon the notes in suit and the obligations of the defendant to the plaintiff, incurred by indorsing the Read notes and the deposit of the Hoffman House bonds as collateral, all took place before the agreement was made. This the defendant

concedes in his testimony, and the only question with reference thereto is as to whether the bonds were deposited with the plaintiff as collateral security for the defendant's liability upon the Read notes, or as collateral to the notes in suit alone. In determining this question the affirmative was with the defendant. As we have seen, he has failed to show that the bonds were delivered to the plaintiff as collateral security for the payment of the notes in suit, *and for no other purpose.* The trial court, therefore, properly directed a verdict against him for the amount conceded to be due upon the notes.

The judgment should be affirmed, with costs.

MARTIN, J. Three opinions having already been written in this case I shall content myself with a brief statement of the reasons which lead me to the conclusion that the judgment should be affirmed. It is apparent that the case of *Stokes* v. *Stokes* (148 N. Y. 708) cannot be given the effect claimed for it by the present appellant and accorded to it in the opinions which favor a reversal. The only question actually involved in that case was whether, under the circumstances proved, specific performance ought to be decreed. It arose upon the then defendant's counterclaim by which he sought to compel the plaintiff in that action to specifically perform the contract of August eighteenth by depositing $25,000 of bonds, in addition to the $155,000 already deposited with him. It was understood by the parties, when they entered into that contract, that William could probably purchase from Read his stock which consisted of 1,963 shares. That, he was unable to do. He was thus relieved from the investment of a large amount of money which would have been required for the purpose if he had been able to make the contemplated purchase. That the securities which he held were abundantly sufficient to indemnify him against any liability, actual or contingent, which then existed by reason of that contract, was obvious. Under those circumstances, this court held that specific performance ought not to be decreed, and that the General Term erred in reversing the judgment of the Special

Term, which dismissed both the plaintiff's complaint and the defendant's counterclaim. Obviously this was upon the ground that the liability of William was less than was originally contemplated, and, hence, did not require the deposit of any additional security to completely indemnify him. Under the circumstances the discretion which rests in a court of equity in determining whether specific performance shall be granted or withheld, plainly authorized the court to refuse the decree sought. The right of specific performance rests in the judicial discretion of the court, and may be granted or withheld upon a consideration of all the circumstances and in the exercise of such discretion. (*Seymour* v. *Delancey*, 6 Johns. Ch. 222; *Margraf* v. *Muir*, 57 N. Y. 155; *Miles* v. *Dover Furnace Iron Co.*, 125 N. Y. 294, 297; *Gotthelf* v. *Stranahan*, 138 N. Y. 345, 351; *McPherson* v. *Schade*, 149 N. Y. 16, 21; *Heller* v. *Cohen*, 154 N. Y. 299, 306.)

It is a well-established principle relating to this subject that specific performance will never be decreed where it would be inequitable. It is immaterial whether the fact that it is inequitable arises from the provisions of the contract, or from external facts or circumstances which affect the situation and relations of the parties, for in either case it may constitute a sufficient ground for a court of equity to withhold this peculiar relief, and to leave the parties to their legal remedy. (*Seymour* v. *Delancy*, 3 Cow. 445; *Clarke* v. *Rochester, Lockport & N. Falls R. R. Co.*, 18 Barb. 350; *Peters* v. *Delaplaine*, 49 N. Y. 362; *Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311, 317; *Murdfeldt* v. *N. Y., W. S. & B. R. Co.*, 102 N. Y. 703; *Day* v. *Hunt*, 112 N. Y. 191, 195; *Conger* v. *N. Y., W. S. & B. R. R. Co.*, 120 N. Y. 29, 32; *Baily* v. *De Crespigny*, L. R. [4 Q. B.] 180; *Shrewsbury & Birmingham Railway Co.* v. *London & N. W. Railway Co.*, 4 DeG., M. & G., 115; 6 House of Lords Cases, 113; *Wedgwood* v. *Adams*, 6 Beav. 600; 8 id. 103.)

In reviewing the judgment in the first case, the General Term was not justified in reversing it; unless it appeared that the proof so clearly preponderated in favor of a conclusion

adverse to that reached by the trial court that it could be
said with reasonable certainty that it erred in its conclusion.
(*Baird* v. *Mayor, etc.*, 96 N. Y. 567; *Lowery* v. *Erskine*,
113 N. Y. 52, 55; *Weber* v. *Bridgman*, 113 N. Y. 600, 607;
*Aldridge* v. *Aldridge*, 120 N. Y. 614, 617; *Devlin* v. *Green-
wich Savings Bk.*, 125 N. Y. 756; *P. I. Co.* v. " *Hopatcong* "
& " *Musconetcong*," 127 N. Y. 212; *Barnard* v. *Gantz*, 140
N. Y. 253; *Cook* v. *N. Y. E. R. R. Co.*, 144 N. Y. 117;
*Bloom* v. *Nat. Savings & Loan Co.*, 152 N. Y. 119; *Foster*
v. *Bookwalter*, 152 N. Y. 168.)   There was no abuse of the
discretion possessed by the trial court.   In that case, as it
was unnecessary, it would have been clearly inequitable to
require the defendant to deposit the additional $25,000 in
bonds, and, hence, the trial court was justified in dismissing
the counterclaim, and the General Term was not authorized
to reverse its determination.   Therefore, this court properly
reversed the decision of the General Term and directed judg-
ment absolute for the defendant.

Thus, it is seen that the decision of this court in that case
did not involve the validity or effect of the agreement between
the parties, but only whether, under the circumstances proved,
Edward should be required to specifically perform it by depos-
iting the additional $25,000 of bonds.   Whether the bonds in
the possession of William might be held by him as collateral
security for the purposes mentioned in the contract of August
eighteenth, was not involved, and, therefore, the judgment in
that case has no bearing upon the question now before us.   It
neither constituted an estoppel to the plaintiff's claim that he
was entitled to hold the bonds in his hands for the liabilities
mentioned in the agreement, nor was it proper evidence upon
that subject.   The rule in relation to the estoppel of judg-
ments, as announced by Lord Chief Justice DE GREY in the
*Duchess of Kingston's* case, was indorsed by this court in
*Stannard* v. *Hubbell* (123 N. Y. 520, 528).   It is as follows:
" That neither the judgment of a concurrent or exclusive jur-
isdiction is evidence of any matter which came collaterally in
question, though within the jurisdiction, nor of any matter.

incidentally cognizable, nor of any matter to be inferred by argument from the judgment." It was said by this court in the *Stannard* case that that rule had been uniformly accepted by the courts as an accurate statement of the law, and it was there held that where an estoppel is claimed in respect to some fact involved in a former action, it is only material, relevant and necessary facts decided in the former action that are conclusive in a second, and that a judgment does not operate as an estoppel as to immaterial or unessential facts, even though put in issue by the pleadings and directly decided. (*Campbell* v. *Consalus*, 25 N. Y. 613; *People ex rel.* v. *Johnson*, 38 N. Y. 63; *Woodgate* v. *Fleet*, 44 N. Y. 1; *Sweet* v. *Tuttle*, 14 N. Y. 465.) Again, in *Springer* v. *Bien* (128 N. Y. 99) it was held that, although a judgment had been entered in a former action, it did not prevent the relitigation of a fact litigated and found in such action, which was irrelevant to the issues therein, and did not enter into, and was not involved in, the final judgment. A judgment does not operate as an estoppel in a subsequent action between the parties, except as to such facts as are litigated and decided, and which have such a relation to the issue that their determination was necessary to the determination of that issue. (*House* v. *Lockwood*, 137 N. Y. 259.)

As we have seen in the trial of the former action, the only issue was whether, under the circumstances, specific performance should be decreed. Whether the securities already in the possession of William might be held by him as security for the liabilities mentioned in the agreement, was not at all material, or in any way necessary to the determination of that issue. It was not a relevant or necessary fact to be decided in that case. The decision of the court was only to the effect that as William was abundantly secured against loss by reason of any liability of Edward, direct or contingent, it would be inequitable to compel the latter to deposit the additional security provided for by the contract, and, hence, the court would not accord to him the peculiar relief of specific performance, but leave the parties to their legal remedy. Hence,

it follows that the question whether William is entitled to hold the bonds in his possession as collateral security for the performance of the provisions of the contract, is an open one and not controlled by the decision in that case.

As the judgment in the former action between the parties was not conclusive against the right of William to hold the bonds remaining in his hands as security for all the claims provided for in the agreement of August eighteenth, I think they may be held for all the guaranties contained in that agreement, for the loan of the $32,000, for any obligation of the defendant connected with Read, including the two notes made by Read and indorsed or guaranteed by the defendant, amounting to $25,000, as well as against any foreclosure of the mortgage mentioned therein. That contract was not so far entire that the purchase of all of Read's nineteen hundred and sixty-three shares of stock by William was a condition precedent to the enforcement of the rights conferred upon him by the provisions of that agreement. Indeed, it is manifest from the contract itself that the parties contemplated the situation which actually arose as to the inability of William to purchase all the shares owned by Read. This is shown by the portion which states that he is about to purchase of Read the remainder of his stock, *or a portion thereof,* with the intent that the parties may be the owners of the whole, and by the further provision that William was to sell and transfer to Edward, at the price paid, one-half of the whole, *or of such portion of the 1,963 shares as he might purchase from* Read. Thus, the contract clearly shows that the parties intended that William should purchase the entire stock held by Read if it could be done, when the parties would together be the owners of the whole, but that he might be able to purchase only a portion was contemplated, as is plainly evinced by the language employed.

The consideration for the contract of August eighteenth was the mutual covenants and agreements of the parties. The provisions to be kept or performed by William have been performed by him, except so far as he has been unable to pur-

chase all of the 1,963 shares of stock then owned by Read. He purchased all Read would sell. He could do no more. As we have already seen, the probable impossibility of purchasing all of this stock was understood by the parties when the agreement was made. But there was no provision that, in that event, the contract should become invalid or inoperative, or that it should not bind the parties as to its other provisions which could be performed. To say that there was a failure of the consideration for this contract is not, I think, correct. Nor do I understand that this court intended to hold that there was such a failure of the consideration as to render the contract inoperative. I think the condition which ultimately existed was not only contemplated by the parties, but that they intended that in case of the inability of William to purchase the Read stock, the remainder of the contract should continue in force. This seems manifest from the provisions and purpose of the agreement, which was to carry on the business of managing the hotel, restaurant and café connected with the Hoffman House, and for the management of the business of the corporation, as well as from the provision showing that the possibility of his being unable to purchase the whole of the Read stock was contemplated when the agreement was made.

It must be admitted, however, that, in the opinion in the first case, the judge writing took a somewhat different view of the provision as to the purchase of the Read stock. But the consideration of that question was merely incidental, and not at all important or material in determining the issue there presented, which was plainly stated by the learned judge as follows: "Ought specific performance, under the circumstances, to be now decreed?" A majority of the court was of the opinion that it ought not, and that was the sole question decided. As was said by VANN, J., in *Colonial City T. Co.* v. *Kingston City R. R. Co.* (154 N. Y. 495): "It was not our intention to decide any case but the one before us. * * * If, as sometimes happens, broader statements were made by way of argument or otherwise than were essential to the decision of the questions presented, they are the dicta of the writer of the opinion

and not the decision of the court. A judicial opinion, like evidence, is only binding so far as it is relevant, and when it wanders from the point at issue it no longer has force as an official utterance." It seems to me that the only question decided in the former case was whether specific performance should be decreed, and that the question now before this court was not involved in that case. Hence, while I concur in the opinion of my brother HAIGHT, I am also of the opinion that, under the agreement between the parties, the plaintiff was entitled to hold the bonds in question to secure all the guaranties and obligations mentioned in its sixth paragraph, that the tender by Edward was, consequently, insufficient, and that the judgment appealed from should be affirmed.

PARKER, Ch. J. (dissenting). The defendant, about May 1st, 1891, gave to the plaintiff bonds of the Hoffman House Association of the par value of $125,000, and of the United Lines Telegraph Company of the par value of $30,000, as security for the payment of the notes in suit. Thereafter the parties entered into a written agreement which provided that the plaintiff should hold the first-mentioned bonds as security for the payment of such notes and of two other notes, upon which the defendant was an indorser, and as an assurance of the performance of certain guaranties by the defendant. This latter contract is dated August 18th, 1891, and was considered by this court in *Stokes* v. *Stokes* (148 N. Y. 708), it being decided that William E. D. Stokes was not entitled to specific performance thereof, because of a failure of performance on his part. This action was brought to enforce collection of the notes, for which the bonds were first pledged, and the defendant, shortly after its commencement, tendered to the plaintiff $37,500, being the amount due on said notes with interest and costs to that date, upon condition that the plaintiff should surrender to the defendant such bonds. The plaintiff refused to accept the tender. Thereupon the defendant answered, alleging the tender as a defense and also alleging, by way of counterclaim, that the refusal of

the plaintiff to accept the tender constituted a conversion of the bonds to his own use. The plaintiff, in his reply, denied that the securities described in the answer were deposited with, accepted and held by the plaintiff solely as collateral security for the promissory notes described in the complaint and answer, and further averred as follows: " Plaintiff alleges as to the $125,000 of the Hoffman House bonds, that after the same had come into the possession of plaintiff and on or about August 24, 1891, a certain contract or agreement in writing and under seal bearing date August 18, 1891, was made, executed and delivered by and between the plaintiff and defendant, the original whereof plaintiff offers to produce and prove upon the trial of this action. That in part performance of said contract, dated August 18, 1891, and for the purposes therein recited, and as set forth in that paragraph thereof marked " Sixthly," which provides: " *Sixthly.* And as security for these guaranties, for a loan of about $32,000, and for any obligation of said Edward S. Stokes to said William E. D. Stokes, connected with said Read, and against any foreclosure of the said mortgage, said Edward S. Stokes has deposited with William E. D. Stokes bonds of said Hoffman House to the par value of $150,000." The said $125,000 of Hoffman House bonds, and no more and none other thereof, were deposited with and are still held by plaintiff.

There is no mistaking the issue made by the pleadings. The plaintiff asserted the right to hold the bonds, under the agreement of August 18th, as security for all of the purposes described in paragraph " Sixthly," while the defendant denied the existence of any such right. But the learned counsel for the respondent has on this review discovered a new issue, one not suggested by the pleadings, but born of the emergency created by the recent decision of this court holding that this defendant could not be compelled to deposit the $25,000 of Hoffman House bonds, which was necessary to bring the total amount of the deposit up to $150,000, as provided in the paragraph of the agreement marked " Sixthly." Apparently appreciating the difficulty of persuading the court that a contract without

sufficient consideration to support William E. D. Stokes' claim
that he was entitled to have put in his possession the $25,000
of Hoffman House bonds not yet delivered, nevertheless had
sufficient consideration to support William E. D. Stokes' claim
of right to hold the bonds actually in his possession under the
very same agreement, and for all the purposes recited therein,
counsel urges that the decision of the trial court may be
upheld, because of what he asserts to be the failure of the
defendant to prove that the bonds were not in the first instance
pledged for other purposes than the notes of the defendant.
Nothing of the kind was suggested by the pleadings. The
defendant offered no testimony tending in that direction. No
inquiry was made of the defendant on cross-examination that
even suggested that counsel entertained such an idea. There is
not a hint of it anywhere in the record, and, with the issue
well defined, it would be strange indeed if the defendant's
rights could be cut off by a failure to negative every other
possible purpose for which the bonds could have been made
use of as collateral. But assuming that it was incumbent
upon the defendant to establish that, aside from the written
agreement of August 18th, the bonds were deposited with the
plaintiff as collateral security for the notes of which the
defendant was the maker, and of those notes only, he has met
that burden fully, as will presently be made to appear.

The defendant was the only witness sworn, and he testified
that the $30,000 of United Lines Telegraph bonds and
$100,000 of Hoffman House bonds were deposited with the
plaintiff on or about May 1st, when three notes aggregating
$32,300 in all were made by the defendant and delivered to
the plaintiff, and that subsequently between the first of May
and the first of August, the defendant, expecting to borrow
$4,000 more of the plaintiff, made a further deposit of $25,000
of Hoffman House bonds as collateral, so that plaintiff then
held $125,000 of Hoffman House bonds. The defendant
further testified as follows: "I mean the plaintiff had
$125,000 of the Hoffman House bonds and $30,000 of United
Lines Telegraph bonds as against these loans." Not "as

against" failure to perform guaranties nor "as against" the
loans of other people, but "as against *these loans*," referring
to those already fully described. But defendant's counsel did
not stop there. The agreement of August 18th, 1891, was
then shown witness, who was asked this question : "Q. Were
these $125,000 worth of bonds deposited by you with the
plaintiff as collateral for any other debt or for any other pur-
pose than for those notes and whatever is stated in this agree-
ment? A. I would like to premise my answer somewhat by
explaining. These bonds were deposited, as I previously
stated, previous to the agreement of August 18th, 1891. Q.
Were these $125,000 worth of bonds deposited by you with
the plaintiff as collateral for any other debt or for any other
purpose than for these four notes, and whatever is stated in
this agreement? A. I allowed them to remain with the plain-
tiff for that purpose and for no other purpose."

There can be no mistake about this testimony nor the object
of it. Its purpose was to negative any possible claim that
there was any other agreement of pledge than the one which
he had described and the written agreement of August 18th,
to which his attention was called. The judgment roll in the
action of *Edward S. Stokes* v. *William E. D. Stokes* was
offered in evidence, and a perusal of the judgment only served
to support the assertion of the plaintiff that the first and only
agreement prior to the written agreement of August 18th, by
which the Hoffman House bonds and the United Lines Tele-
graph bonds were deposited with this plaintiff as collateral,
was the agreement of May 1st, when the notes were made.
There was apparently no more dispute about this question on
that trial than on this. The plaintiff in that suit asked the
court to find : "Third, to secure the notes for $32,000 the
plaintiff had with other securities deposited with the defend-
ant in pledge $125,000 of bonds of the Hoffman House Cor-
poration secured by a mortgage on the property of the said
corporation. Defendant held no collateral security from the
plaintiff to protect the $10,000 or the $15,000 notes made by
said Read and indorsed and guaranteed by the defendant as

aforesaid." The defendant requested the court to find on that subject as follows: " Second, on and prior to the 9th day of July, 1891, plaintiff was indebted to defendant in the sum of $36,300, which indebtedness was represented by four promissory notes made by the plaintiff, payable to the order of defendant on the dates and in the amounts as follows: A note in the sum of $12,300, dated May 1st, 1891, payable four months thereafter; a note in the sum of $10,000, dated May 1st, 1891, payable four months thereafter; a note in the sum of $10,000, dated May 1st, 1891, payable four months thereafter; a note in the sum of $4,000, dated the 14th day of August, 1891, payable three months thereafter. On or about the 10th day of July, 1891, there was paid on account of the indebtedness represented by said notes the sum of $2,000, leaving a balance of $34,300, with interest still due and owing the plaintiff. Third, as collateral security for the payment of the *aforesaid indebtedness* plaintiff delivered to the defendant 125 six per cent first mortgage bonds of a corporation, organized under the laws of the state of New Jersey, known as the Hoffman House, of the par value of $125,000, and 30 bonds of the corporation, The United Lines Telegraph Company, of the par value of $30,000, all of which securities are still in the possession of the defendant." Thus it appears that the counsel for the plaintiff and the counsel for the defendant each requested the court to find that the original deposit of these bonds was for the security of the defendant's notes and for no other purpose.

An examination of both the majority and minority opinions of this court, when the case was on review (148 N. Y. 708), shows that there was no mistake in the minds of this court about the situation and that it was then understood here, as counsel for both parties and the court had understood it below, that these bonds were put up as collateral for the promissory notes made by this defendant, and for no other purpose, in the first instance, and that there was no other modification of the terms of the original pledge, except such as was made by the written agreement of August 18th.

It is needless to pursue this subject further, for it is apparent that only one finding on this evidence was possible, viz. : That the plaintiff never acquired the right to hold these bonds as collateral security for the payment of any other indebtedness than the defendant's notes, nor for any other purpose, except as provided by the written agreement of August 18th.

I have so far omitted reference to the contention that the sixth paragraph of the agreement, quoted above, is evidence of a prior agreement; that the form of it is not one of present agreement, but a recital of a past agreement, because it states that, " as security for these guaranties, for a loan of about $32,000, and for any obligations of said Edward S. Stokes with said William E. D. Stokes, connected with said Read, and against any foreclosure of the said mortgage, said Edward S. Stokes *has deposited* with William E. D. Stokes bonds of said Hoffman House to the par value of $150,000."

When we read this clause in connection with the rest of the agreement, having in mind the fact that $125,000 of the $150,000 bonds referred to had been deposited some months prior as collateral security for this defendant's notes, we necessarily reach the conclusion that it forms a part of a present agreement, and that the contention that it should be treated as a recital of a prior transaction is without foundation. Indeed, that question was passed upon necessarily in this court in *Stokes* v. *Stokes*, (*supra*), when the court held that, by reason of the failure of William E. D. Stokes to perform his part of the agreement, Edward S. Stokes could not be compelled to deposit the $25,000 in bonds required to make the amount $150,000, as provided in the agreement. It could not, of course, have been so held were it the fact that paragraph " sixthly " was but the recital of a prior agreement. But we need not stop to discuss this proposition seriously, for the plaintiff, in his reply, alleges that the said $125,000 of Hoffman House bonds were deposited with and are still held by plaintiff in part performance of the contract of August 18, 1891, and for the purposes therein recited and as set forth in paragraph " sixthly," and further alleges that the defendant

has neglected and refused to deposit with the plaintiff $25,000 additional Hoffman House bonds as required by said agreement.

We are thus brought to the real question of the case, or rather to what was a substantial question prior to the decision of this court holding the agreement was without consideration, and that is, whether the plaintiff has the right to hold these bonds, under the written agreement of August 18th, as collateral for the Read notes and as collateral for the guaranties of Stokes against all claims against the Hoffman House by C H. Read & Company, or John W. Mackey, or any other person, as the creditors of the said C. H. Read & Company, as well as against any foreclosure of the Hoffman House mortgage; for it is very plain that, if the plaintiff is entitled to hold the bonds under this agreement for any purpose, he is entitled to hold them for all the purposes I have mentioned; to hold them until the plaintiff has made good every guaranty contained in that agreement.

Unquestionably the agreement covered these bonds, and if plaintiff had performed the agreement on his part he would be entitled to hold them to assure performance on the part of the defendant.

But it was the defendant's contention that plaintiff failed to carry out his part of the agreement, and by reason thereof there was a failure of consideration, so that the agreement ceased to be binding upon this defendant long prior to the commencement of this action. The evidence relied upon to support this contention consists of the judgment roll in the action of *Edward S. Stokes* v. *William E. D. Stokes,* which was put in evidence on the trial. This judgment was not pleaded in bar, as indeed it could not have been, for it is not a bar to an action on the notes; but it is insisted that it contains an adjudication between these parties that the plaintiff failed to perform the consideration of the agreement which he now invokes for his protection, and that such adjudication is conclusive evidence of the fact adjudged. The general rule on this subject is well known to be that a former judgment of the same court, or of a court of competent jurisdiction,

76

directly upon the point in issue, is, as a plea, a bar, or as evidence, conclusive between the same parties or those claiming under them, upon the same matter, directly in question, in a subsequent action or proceeding. This has been the rule certainly since the *Duchess of Kingston's Case* (11 State Trials, 261). (See *Gardner* v. *Buckbee*, 3 Cowen, 120; *Clemens* v. *Clemens*, 37 N. Y. 73; *Embury* v. *Conner*, 3 N. Y. 511; *Gall* v. *Gall*, 17 App. Div. 312; *Harris* v. *Harris*, 36 Barb. 88; *White* v. *Coatsworth*, 6 N. Y. 137; *Stowell* v. *Chamberlain*, 60 N. Y. 276.)

The judgment roll was in an action between the same parties. It was about the same matter, for it involved the right of W. E. D. Stokes to compel the delivery to him of $25,000 of the $150,000 of bonds provided for by the agreement. It was directly in question; indeed there was no other question, for the defendant in his answer, as a counterclaim, pleaded that E. S. Stokes had failed to deposit $25,000 of the $150,000 of the Hoffman House bonds as security, pursuant to the provisions of the said agreement, and demanded judgment for the deposit of such additional bonds, or the payment of their equivalent in value. To this counterclaim the plaintiff, E. S. Stokes, made reply denying that the defendant was entitled to hold the $150,000 of bonds under the said agreement, and alleging that he had failed to carry out his part of the contract. The case coming on for trial, the plaintiff consented that the complaint should be dismissed, but the defendant insisted upon his right to establish his counterclaim, and thereupon was litigated the question relating to the consideration of the agreement and the right of Wm. E. D. Stokes to enforce its performance. Not only does it appear from the requests to find by counsel for both parties, but also by the findings actually made by the court, that the matter in controversy related to the consideration of the agreement and the right of Wm. E. D. Stokes to insist upon performance thereunder by Edward S. Stokes. The conclusion of law, as found by the court, was to the effect that it was the intent of the parties that Wm. E. D. Stokes should purchase of Read the

whole of the 1,963 shares, or such portion thereof as the plaintiff should not buy ; and as the defendant had failed to make such purchase, within a reasonable time, and on account of the refusal of Read to sell could not make it, he was not entitled to enforce the contract. Upon this decision judgment was entered, from which we extract the following : " Adjudged that the cause of action, set forth in the defendant's counterclaim, be dismissed upon the merits, without costs.    *    *    * It is further adjudged that the construction of the contract of August 18, 1891, is that the understanding of the parties was that the defendant should purchase of Read the whole of his 1,963 shares of stock, or such portion thereof as should be sufficient to make the parties to said contract the sole owners of the whole of the stock of the Hoffman House. In other words, the defendant was to buy the whole of the stock or such portion thereof as the plaintiff should not buy. It is further adjudged that the defendant, not having purchased the said stock of Read within a reasonable time from such contract, and the proof being that he has been unable to purchase, by reason of the refusal of Read to sell, the *contract cannot be enforced* against the plaintiff."

Surely it is unnecessary to argue that the question there passed upon by the court was the precise question involved in this case. The only difference between the two cases is that in that case we had $25,000 of the $150,000 involved, while in this one $125,000 of the amount agreed upon is involved. One amount of bonds was larger than the other, but each formed a part of the agreed deposit of $150,000 of bonds. The consideration was not susceptible of apportionment. The contemplated purchase of the Read stock was as much the consideration for the defendant's consent that the $125,000, already deposited, should be held as security under the agreement, as was his promise to deposit the additional $25,000 of bonds. If Edward S. Stokes had not deposited any portion of the $150,000 of bonds, the court would have refused to compel their delivery because of the failure of Wm. E. D. Stokes to perform his part of the contract. The fact that

Wm. E. D. Stokes had possession of a portion of the consideration, under a prior contract, does not at all affect the situation. So far as this agreement is concerned, all of the bonds were in like condition. The agreement was indivisible, and Wm. E. D. Stokes was as much entitled under it to the $25,000 in bonds as to the $125,000. But all the court could do, in the first case, was to adjudge that there was a failure of consideration, and deny to Wm. E. D. Stokes his claim of right to a specific performance of the contract as to the $25,000 of bonds which had not been delivered. It could not adjudge that the plaintiff was entitled to have delivered to him the $125,000 of bonds for Wm. E. D. Stokes held them, as we have observed, under another agreement, and as collateral security for the notes which are involved in this litigation. All that it could do was to adjudge, in effect, that by reason of the failure of Wm. E. D. Stokes to perform his part of the agreement, there was a failure of the consideration, and, hence, he was not entitled to require Edward S. Stokes to make deposit of such of the bonds as had not been deposited under the agreement. But, in so doing, the court necessarily and conclusively determined that Wm. E. D. Stokes was not entitled to retain, under that agreement, any part of the bonds called for by it, for, as we have observed, the agreement was not divisible, neither was the consideration divided and apportioned to the different provisions of the agreement. In due course the judgment reached this court, and, while the court was not unanimous in affirming the judgment, yet the affirmance, under our procedure, put at rest all controversy relating to the claim of right on the part of Wm. E. D. Stokes to enforce the agreement. The prevailing opinion of the court, after a careful consideration of the agreement and the subsequent conduct of the parties under it, said :

" Ought specific performance under the circumstances be now decreed ? We think not. The liability of the plaintiff to the defendant has not been increased. The defendant, through the refusal of Read to sell, has not been able to carry out the understanding of the parties, which formed the real

consideration for the deposit with him of the additional collateral. A contract must possess certain elements in order that a court of equity may exercise jurisdiction to compel its performance. 'It must be upon a valuable consideration. It must be reasonably certain as to its subject-matter, its stipulations, its purposes, its parties, and the circumstances under which it was made. It must be, in general, mutual in its obligations and its remedy.' (3 Pomeroy's Eq. Jur. § 1405.) The reversal of the judgment by the General Term appears to have been based upon a misconception of the facts. In the opinion it is stated that the pledge of the bonds was in consideration of the loan of about $32,000. The fact that the loan was *pre-existing* evidently had been overlooked."

The matter having been passed upon by the court, it would be a work of supererogation to attempt a further discussion of the agreement and the conduct of the parties thereunder for the purpose of giving further assurance that the decision made was demanded by the facts and the law. The judgment which that decision of the court affirmed has become finally conclusive as evidence as to the questions actually passed upon by the court, and, as evidence, it conclusively determines in this case that the plaintiff is not entitled to hold the bonds under the agreement of August 18th. His only right to the bonds, therefore, at the time defendant made the tender, was under the agreement of the May preceding, in pursuance of which the bonds were delivered to him as collateral security for the payment of defendant's notes, to enforce collection of which this suit is brought. But as we have seen the defendant made tender to the plaintiff of the entire sum due on these notes, together with interest and costs, and thereupon he became entitled to their possession. But this possession was refused; the plaintiff claimed the right to hold them under the agreement of August 18th, which claim we have seen was not well founded. It matters not that the plaintiff was of the opinion that he had a right to hold the bonds under that agreement. The test by which it is to be decided whether he converted the bonds or not, must be answered as the question of right is

determined, and it being held that the plaintiff was without right to retain the bonds after the tender was made to him by the defendant, it follows that his refusal to make delivery of the bonds, in compliance with the defendant's tender and demand, constituted a conversion of them.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Gray, J. (dissenting). I agree entirely with the reasoning and conclusion of the Chief Judge and I should not add anything thereto, were it not for what I cannot but think is an oversight on the part of my brother Haight, with regard to the pleadings and the real issues which were presented to the court below. Judge Haight writes for affirmance upon the specific ground that the defendant failed to show that the bonds in question were delivered to the plaintiff as collateral security for the payment of the four notes in suit *and for no other purpose ;* in other words that he failed to prove a negative. It might be sufficient to point out the latter objection and to say that, where a party avers that bonds were deposited with his creditor as collateral security for a debt, he need only aver and prove the tender of the debt to entitle him to the return of his bonds ; and that the burden is on the creditor who claims still to retain them, to aver and prove that they were held by him as security for something besides the debt. An averment of the debtor that he deposited the bonds with his creditor as security for the debt and *for no other purpose* is, in legal effect, simply an averment that he deposited them as security for the debt. The words italicized merely emphasize the real facts averred. They are unnecessary and are, as matter of pleading, surplusage. The debtor is only called upon to prove the fact and not the irrelevant negative. If the securities are held for any other purpose, it is surely for the creditor to aver and prove the facts tending to establish that other purpose. The doctrine suggested here reverses the ordinary rules of pleading and the effect thereof upon the trial of the true issues.

But, passing that view, which, however, seems reasonably clear, I find, upon examining the pleadings, that the defendant tendered no such negative issue as my brother HAIGHT suggests; and it is for this reason that I think it proper to analyze the pleadings and to point out what I deem to be an inadvertance on that head.

Judge HAIGHT premises by saying that it is alleged in the counterclaim that " at the time of the execution *of the notes in question,* the defendant deposited with the plaintiff, as security therefor" the bonds in dispute; "that such bonds were accepted and held by the plaintiff as collateral security for the payment *of the notes and for no other purpose* \* \* \* that the plaintiff replied by denying that the bonds were deposited with him *solely* as collateral security for the payment *of the promissory notes described* in the *complaint* and alleged that the one hundred and twenty-five Hoffman House bonds had come into his possession prior to August 24, 1891," when the agreement, dated August 18, 1891, was executed. Upon this statement of the issues, Judge HAIGHT bases his conclusion, that thus, " the burden rested upon the defendant of showing that the bonds were held as collateral security for the payment of the notes in suit and for no other purpose."

In other words, he argues that the defendant tendered the negative issue; that the plaintiff in his reply joined issue with the defendant thereon, and that the defendant failed because he did not establish the negative averred.

Now, let us carefully examine the counterclaim and reply, and see whether any such issue was really tendered. In the first place, there is no allegation that, at the time of the execution of the four notes in suit, the defendant deposited with the plaintiff as security therefor the bonds in question; nor is there any allegation that they were accepted and held by the plaintiff as collateral security for the payment of the four notes in suit, *and for no other purpose.* The allegation is that at the time of the execution of the *first three* promissory notes, dated May 1, 1891, the defendant deposited with the plaintiff as collateral security *therefor* one hundred Hoffman

House bonds and thirty United Lines Telegraph bonds. *This allegation is undenied in the reply.* The next allegation is that afterwards and as a further security for the payment of *these three notes,* the defendant deposited with the plaintiff twenty-five other Hoffman House bonds, making a total of 125 Hoffman House bonds and 30 United Lines Telegraph bonds, " all of which " — to quote the counterclaim — " were accepted and held by the said plaintiff as collateral security *to the said three notes and for no other purpose.*" This is the only place in the counterclaim where the words " *and for no other purpose* " are to be found. Consequently, this is the only negative allegation on the subject. If that allegation tendered an issue as to the negative words, it was an issue as to whether, *at that point in the transaction,* the plaintiff held the bonds as security *for the three notes and none other.* But even as to that issue, there is no joinder in the reply. The allegation on that head is in fact undenied. What we find is a denial of something which is not averred. The denial in the reply, and it is the sole denial, is in these words : " Plaintiff denies that the collateral securities described in the answer   *   *   * were deposited with and accepted and are held by plaintiff solely as collateral security for the promissory notes described in said complaint and in said answer and for no other purpose."

It will be observed that the defendant nowhere alleges in his counterclaim that these securities were accepted by the plaintiff, or were ever held by him, as collateral for the promissory notes in suit, and for no other purpose. He expressly alleged that at one time, namely between May 1st, 1891, and August 14, 1891, the plaintiff accepted and held these bonds as collateral security to the first three notes described in the complaint and for no other purpose. That is, he *then held them* for *the three notes and for none other.* The plaintiff admits this by not denying it. What he pretends to deny is that he holds the securities for the four notes described in the complaint and for no other purpose. He thus creates an imaginative allegation for the purpose of a fictitious denial. It is apparent that he did this deliberately, and could not have been mis-

led, or mistaken, about it. In proof of this we need only look at the allegation of the counterclaim, which immediately follows the words "and for no other purpose."

That allegation is that "afterwards," namely, after the acceptance of the bonds as security *for the three notes and for no other purpose* and upon the execution of the fourth note for $4,000, which was *dated August 14, 1891,* "it was agreed between the plaintiff and defendant that the plaintiff should hold the said 155 bonds as collateral security, *also* for the payment of the said $4,000 note."

Now this latter averment is entirely undenied in the reply. What then does it come to but this; that the defendant alleged and the plaintiff admitted that prior to the execution of this fourth note the latter held the securities for the payment of the three preceding notes and for no other purpose; but that, upon the execution of the fourth note, that note was also embraced within the preceding purpose, and, when so embraced, came within the cover of the original security. It will be observed that the defendant no longer avers, at the foot of this allegation, that the bonds are held for the payment of *the four notes and for no other purpose.*

It amounts to this, that there was, so defendant alleges, no other purpose until the fourth note was executed; and then there was *that one other purpose.* The sequence here is clear and distinct. The bonds were held from May to August 14th for the three notes and for no other purpose; but, on August 14th, they were held *also* for the fourth note. The defendant consequently tendered no issue as to any other purpose apart from and outside of the four notes. I may add that he tendered no such issue even as to the three notes; for the obvious reason that he avers this other and later purpose, which immediately follows the words — " and for no other purpose;" as these words are used in their proper relation to the intermediate period.

Thus there would seem, upon the pleadings, to have been no question with regard to the Read notes, save such as was

77

presented by the August agreement. As to that, the subject has been fully considered by the chief judge and as Judge HAIGHT expresses no difference of opinion on that head, I assume that he too concurs in the general views there presented as to the effect of that agreement. Certainly, there is nothing in the sixth clause of that agreement, which permits us to vary the admitted status as it was prior to its execution.

It was suggested that the sixth clause might be treated as a recital of a past agreement and not as a present covenant. But this is far fetched and unworthy of·special consideration. The sixth clause is *among the numbered covenants* and bears directly upon them. It could not well recite a deposit which did not exist. The only truthful recital which could have been made would have been a recital of the deposit of $125,000 of Hoffman House bonds, as collateral to the $32,000 of Edward's notes. All else is, necessarily, a covenant to make an additional deposit and to permit both the old (*actual*) and the new (*promised*) deposits to operate in due course as security for the additional features, which are specified, as well as for the $32,000 of Edward's notes. To talk of this as a recital, rather than a covenant, is simply to juggle with words. It is impossible thus to get away *from the facts* and to twist them into a *legal fiction.*

We thus have an admitted possession of these 155 bonds, down to the August agreement, for an admitted purpose; namely, as security for the four notes in suit. We then have the August agreement for the first time *extending* these admitted purposes upon a new consideration then moving from the plaintiff; which consideration has failed.

It would seem to be a demonstration that the defendant, even if he had not gone upon the stand, was entitled to a verdict for the value of his securities. Certainly, he lost nothing by testifying as he did, in precise harmony with the actual facts. It is said that he should have testified, not merely that he allowed the bonds to remain in the plaintiff's possession under the August agreement, but that they had never previously been in the plaintiff's possession as security for the

Read notes. What was there to call for such testimony? There was nothing in the pleadings. There was something in the agreement; but the agreement was dead. The defendant narrated the precise facts, as he had pleaded them in his counterclaim. It seems puerile to contend that his counterclaim was properly dismissed, because he did not say that the plaintiff had never, prior to the August agreement, held the bonds as security for his contingent liability on the Read notes. No one had asserted, or hinted, that the plaintiff had ever held them for this contingent liability, except the assertion founded in, and upon, the August agreement. But, if that August agreement called for testimony on the defendant's part that, though it was dead, yet the plaintiff never, (apart from, or outside of it), held these bonds for the guarantees specified in the sixth clause, did not the defendant, substantially, say as much when he told the story in its correct and natural order, and concluded by saying that he allowed the bonds to *remain* in the plaintiff's possession for the four notes in suit and for whatever was stated in the August agreement and for no other purpose. Is he to be deprived of his right at least to have his case considered by a jury, because his words are to be taken literally and technically, rather than reasonably and fairly? It will be observed that his counterclaim was dismissed by the trial judge. It was dismissed without any specification of the grounds, by either counsel or court. There was not an intimation that what the defendant (witness) plainly intended to convey was not adequately expressed. The verdict was clearly directed upon other grounds, relating to the effect of the August agreement and of the previous judgment. There was certainly enough to go to the jury, upon the testimony as given and upon the inference which might legitimately have been drawn therefrom, in connection with the pleadings and the record in the prior action.

I shall add a few words as to the effect of that record. It was argued that Justice LAWRENCE in that case, found as a fact that the bonds were held by William *as security for the*

*Read notes and that that finding is contrary to Edward's otherwise uncontradicted testimony* upon the present trial.

This is certainly an entire misconception of what appears in that record. Both sides submitted findings to that learned judge. Edward, in his proposed second request, asked him to find that he (Edward) was, prior to August 18, 1891, indebted to William in about $32,000 on his four notes, *and was also indirectly liable upon the Read notes as guarantor.*

At the same time William, in his proposed second request, asked the judge to find that Edward was indebted to him in a little more than $32,000 ; namely, in a balance of $34,300, on these same four notes. But William *did not add*, as Edward had added, in his proposed second request, that he (Edward) was also indirectly liable upon the Read notes as guarantor. In fact, *William requested nothing and asked no finding at all as to these Read notes.*

Then observe what followed. The learned judge allowed Edward's proposed second finding and disallowed William's, giving as a reason that he (the judge) *had already found William's second request in finding* as *he did Edward's* second.

Now this was an inaccuracy. The judge had not already found as William requested ; for Edward's second finding said that the notes aggregated about $32,000, while William's said that they then aggregated a balance of $34,300. But the only reason why the judge refused to find William's second proposed request was simply because *he mistakenly thought it was repetitious.* He said *he had found it* and *therefore refused to find it over again.* Now comes the strangest misconception. Edward followed his second request with a third, asking the learned judge to find that the Hoffman House bonds (of $125,000) had been deposited to secure the $32,000 of his, Edward's, notes ; and that William held no security to protect the Read notes. The judge substituted for this proposed finding William's third proposed request, a *finding which immediately followed his, William's, second request and related exclusively thereto.* The third finding of

William's was absolutely accurate in *its relation to his own second finding.* It stated that Edward had given William as security for "the aforesaid indebtedness," (namely, the indebtedness of $34,300 specified in William's preceding second finding), the $125,000 of Hoffman House bonds, *and the $30,000 of the bonds of the United Lines Telegraph Co. Edward's third finding* was inaccurate, or rather less complete than William's, in omitting these $30,000 of U. L. Telegraph Co. bonds. So the learned judge very properly allowed William's third finding, and substituted it for Edward's less complete finding. This, however, had not the slightest relation to the Read notes, which were not the subject of controversy before the learned judge.

Now what was the result of this transposition of findings? It was that the "aforesaid indebtedness" referred to by William, in his third request, is no longer the $34,300 of Edward's notes, *but is* the indebtedness specified in Edward's second finding, namely, his (Edward's) "notes aggregating about $32,000." And yet William now contends that it was Judge Lawrence's intention by this double substitution, that is, by the substitution of Edward's second proposed finding for William's second, and the substitution of William's third finding for Edward's third, to find *as a fact* that William *then held* both the Hoffman House bonds, and the $30,000 of the United Lines Telegraph Company bonds, as security for the contingent liability on the Read notes, as well as the actual indebtedness on Edward's own notes.

William has acknowledged throughout, in his reply, when the tender was made and at the trial of the present action, that he never held the $30,000 of U. L. Telegraph Co. bonds as collateral for anything save Edward's notes. He was in fact willing, and offered, to give them up to Edward on payment of the latter's notes. Yet, he would now under the stress of a hopeless case (hopeless, in view of the previous judgment), have us believe that Judge Lawrence found that he, (William), *did* actually hold the *$30,000* of U. L. Telegraph Co.'s *bonds,* as well as the $125,000 of Hoffman House

bonds, as security for the Read notes. The *transposition* of the findings clearly shows the reverse. What the learned judge found is perfectly plain. Edward had asked him to find that William held the $125,000 of Hoffman House bonds, to secure the $32,000 of Edward's notes. The judge in effect said "No. This is not a complete statement. William so holds these notes, it is true, and he so holds them for your $32,000 of notes; *but he also* holds *$30,000* of the U. L. Telegraph Co. bonds, to secure this same indebtedness of yours, and I will find it in that precise and accurate way and not in your partial and incomplete way." William had himself specified Edward's four notes, aggregating $34,300, as "the aforesaid indebtedness." Again, the judge in substance said "No. That too is inaccurate. Edward is right in saying that the indebtedness aggregated but 'about $32,000' and it is *that aforesaid indebtedness* which William holds the two block of bonds for." Thus it is entirely clear that Read's notes were never included in the "aforesaid indebtedness," as contemplated by the proposed findings of either party, or by the judge. Those Read notes were not, in fact, an indebtedness of Edward's at all, but a contingent liability. Neither party in their proposed findings even hinted that the bonds were held as collateral *to that contingent liability.* The findings cannot be strained, or tortured, into meaning what was never intended, and what, in view of the testimony on the one side and the admissions on the other, would have been *wholly without support and in fact absurd.*

Thus it is absolutely clear that there was no finding that these securities were held as collateral to the Read notes; and that in fact, upon the admission in the pleading and the uncontradicted testimony, they were not so held.

Nevertheless, it is now gravely argued that even if the agreement is dead, even if Edward's covenant to increase the security and to permit it when so increased to be held for all the purposes specified in the sixth clause, cannot be enforced, yet the plaintiff was entitled *under this very agreement* to hold the original securities for these *Read notes.* Why? Because, as

the plaintiff contends, the agreement, though dead, *recited* his right to so hold these securities, and that recital lives, though the rest of the agreement is dead; and because Judge LAW-RENCE, in substituting Edward's second request for William's and William's third request for Edward's, has found that William held the notes as collateral for the indebtedness specified in Edward's second request, *and that a contingent liability is* notwithstanding the surrounding and contemporaneous facts, to be construed as an indebtedness.

Both propositions are clearly erroneous.

The more this case is examined, the less defensible seems to be the refusal of the court below to permit the trial upon the counterclaim to proceed. The ruling was equivalent to a nonsuit in an action upon the facts alleged in the counterclaim and was directed without even a motion therefor, specifying the grounds. It would be a gross injustice to affirm such a judicial action upon any narrow, or technical, view of the pleadings and the proofs if it were possible; which I do not at all concede. Every inference that can reasonably be drawn from the facts, should be drawn in favor of the defendant's right to have his case properly submitted to a jury.

He was either entitled to a direction, or to such a submission. In any view of the case, there should be a new trial.

BARTLETT and VANN, JJ., concur with HAIGHT and MARTIN, JJ., for affirmance, and MARTIN, J., concurs with HAIGHT, J.; O'BRIEN, J., concurs with PARKER, Ch. J., and GRAY, J., for reversal.

Judgment affirmed.