(28 Misc. Rep. 58.)

## STOKES v. STOKES.

(Supreme Court, Trial Term, New York County. June, 1899.)

1. PROMISSORY NOTES—COLLATERAL SECURITY—TENDER—BURDEN OF PROOF.

Where defendant in an action on promissory notes sets up a counterclaim alleging a tender of payment by himself, and a refusal by plaintiff to deliver up certain bonds deposited as collateral security, the burden of proof is on defendant to show that the collateral was given to secure the notes only, or, if given to secure some other obligation, that such obligation was discharged before the tender.

2. SAME—CONTRACT.

In an action on promissory notes, defendant set up as a counterclaim a tender by himself, and a refusal by plaintiff to deliver up certain bonds deposited as collateral security. Plaintiff claimed the right to hold the collateral security under a contract whereby defendant agreed, among other things, not to foreclose a mortgage held by him against plaintiff, and which recited that this collateral was deposited to secure the performance of the contract. There was no evidence of any waiver of this contract or any breach on the plaintiff's part. *Held*, that the plaintiff had established his right to retain the collateral security.

Action by William E. D. Stokes against Edward S. Stokes. Motion for the direction of a verdict for plaintiff, and for the dismissal of a counterclaim set up by defendant. Granted.

Albert B. Boardman, for plaintiff.

Edward C. James, for defendant.

FREEDMAN, J. The defendant admits his liability on the notes in suit, and he shows that he tendered to the plaintiff the full amount of the notes, with interest and costs of suit, and at the same time demanded the return to him of the collaterals deposited by him. The plaintiff admits that the tender was made; that it was sufficient in amount, so far as the notes in suit were concerned; and that, in connection with it, the defendant demanded a return of the collaterals deposited with the plaintiff, which demand he (the plaintiff) refused to comply with because he (the plaintiff) claimed the right to hold them for additional obligations. The question, therefore, is whether the defendant, upon making said tender, was entitled to the return of the collaterals; and the solution of that question depends upon the further question whether the said collaterals were pledged by the defendant for the payment of said notes exclusively, or for such payment in part only, and in addition for some other and additional obligation. If they were pledged for the payment of said notes exclusively, as testified to by him, and for no other purpose, the defendant has established his counterclaim; but, even if they were pledged for some additional obligation, the defendant will still be entitled to relief, if he has shown that such additional obligation was discharged, or was no longer in force, at the time of the tender. The collaterals, so far as any claim for them is pressed now, consisted of $125,000 of Hoffman House bonds. The rights of the parties to this action must be determined as of the time of the tender, to wit, November 15, 1892. The burden of proof, under the decision of the court of appeals reported in 155 N. Y. 581, 50 N. E. 342, is upon the defendant to establish either that the said collaterals were pledged only for the payment

of the notes in suit, and for no other purpose, or, if some other obli-- gation was covered by the pledge, that such other obligation was discharged, and not in force, at the time of the tender. Either of these propositions the defendant is bound to establish by a preponderance of evidence. Now, it is true that the defendant has testified that the collaterals in question were pledged only for the payment of the notes in suit, and the plaintiff has denied this, and both have given proof of a great number of facts and circumstances in support of their respective claims. Ordinarily this would present a question of fact for the jury, but it so happens that above this conflict some facts loom up which are decisive of the point, because they are conceded. It is conceded that after the said collaterals had come into the possession of the plaintiff, which was somewhere between April 18, 1891, and July 10, 1891, but before the said tender was made, on November 15, 1892, namely, about August 18, 1891, a certain contract in writing and under seal, bearing date August 18, 1891, was made, executed, and delivered between the parties, and that in part performance thereof, and for the purposes therein recited, it was, by the sixth paragraph thereof, agreed between the parties as follows:

"Sixthly. And as security for these guaranties, for a loan of about $32,000, and for any obligations of the said Edward S. Stokes to said William E. D, Stokes, connected with said Reed, and against any foreclosure of said mortgage, said Edward S. Stokes has deposited with William E. D. Stokes bonds of the said Hoffman House to the par value of $150,000."

In fact only $125,000, instead of $150,000, of Hoffman House bonds, were so deposited, and they are the bonds in controversy. If this contract is enforceable to the extent of enabling the plaintiff to hold the collaterals in suit for the purposes specified in said sixth paragraph, the mere statement of the defendant that the said collaterals were pledged only for the payment of the notes in suit can be of no avail to him. This contract has been reviewed by the courts of this state in litigations between the parties to this action, but the precise question now to be determined has never been squarely decided. As appears from the report of the case in 148 N. Y. 708, 43 N. E. 211, an action was brought by Edward S. Stokes against William E. D. Stokes to restrain the latter from prosecuting certain actions upon the notes in suit here, and for a decree adjudging that William E. D. Stokes holds the collaterals now in question as collateral security only for the payment of such notes. William E. D. Stokes denied this claim, and then set up by way of counterclaim that under the contract of August 18, 1891, he was entitled to have $25,000 worth of additional bonds deposited with him as collateral security; and he prayed for an affirmative judgment for such additional bonds. Upon the trial, Edward S. Stokes offered no evidence, and requested that his complaint be dismissed. William E. D. Stokes objected, and gave evidence to sustain his claim for an affirmative judgment. The trial court found against William E. D. Stokes upon the merits, and this decision, after having been reversed by the general term (34 N. Y. Supp. 1149), was reinstated and affirmed by the court of appeals. This decision is relied upon by Edward S. Stokes as establishing that the contract of August 18, 1891, cannot be enforced in the pres-

ent case. But that contention is untenable. As shown by Mr. Justice Martin in his opinion in 155 N. Y. 589, 50 N. E. 342, in which he wrote in favor of affirming the judgment recovered by William E. D. Stokes upon the notes now in suit, the only question involved in the prior case, reported in 148 N. Y. 708, 43 N. E. 211, was whether, under the circumstances proven, specific performance should have been decreed in favor of William E. D. Stokes upon his counterclaim for the additional $25,000 of bonds; and he fully demonstrated that the question whether bonds in the possession of William might still be held by him as collateral security for the purposes mentioned in the contract of August 18th was not involved at all. So far Judge Haight, who delivered one of the prevailing opinions, was in accord with Judge Martin; but Judge Martin then went on and demonstrated and concluded that while, under the said contract, William E. D. Stokes was not entitled to a further deposit of the additional $25,000 of bonds, he was entitled to hold the bonds in his possession to secure all the guaranties and obligations mentioned in the sixth paragraph, and that consequently the tender of Edward was insufficient. Two other judges are reported to have concurred with Judges Haight and Martin for affirmance. At any rate, Judge Martin's opinion was one of the prevailing opinions. After carefully studying it, and all the other opinions rendered by other judges in that and the other cases between the parties, I cannot avoid the conclusion that the rule as laid down by Judge Martin is the true rule to be now applied upon the present trial. An independent investigation upon the facts now disclosed leads me to the same conclusion. The consideration for the contract of August 18th was the mutual covenants and agreements between the parties. The provisions to be kept or performed by William have been performed by him, except so far as he has been unable to purchase all of the 1863 shares of stock then owned by Reed. He purchased all Reed would sell. He could do no more. The probable impossibility of purchasing all of this stock was understood by the parties when the agreement was made, but there was no provision that in that event the contract should become invalid or inoperative, or that it should not bind the parties as to its other provisions which could be performed; and, as Judge Martin has further shown, there was no failure of consideration. I must therefore hold in accordance with these views. The judges who composed the general term in the case as reported in 75 Hun, 193, 26 N. Y. Supp. 1025, entertained substantially the same views, and, although their decision was overruled, it was overruled solely because they attempted to decree specific performance of an executory part of the contract, which, under the circumstances shown, it was not equitable to do; but their views as to the executed parts of the contract were subsequently indorsed by Judge Martin, of the court of appeals.

It therefore follows that by the terms of said contract the plaintiff in the case at bar had the right to hold the bonds in question as security—First, for the guaranties referred to; second, for a loan of about $32,000, which is represented by the notes in suit; third, for any obligation of Edward S. Stokes to the plaintiff connected with

Reed; and, fourth, against any foreclosure of the mortgage. The question then arises, what, in view of the terms of said contract, the actual facts were at the time of the tender of November 15, 1892. As to the notes in suit, there is no dispute. As to the liability of the defendant arising out of transactions between the plaintiff and Cassius H. Reed, two of said notes have to be considered,—one for $10,000, dated May 18, 1891, which was indorsed by the defendant, and another for $15,000, dated July 7, 1891, the payment of which was guarantied by the defendant. For the payment of these two notes the plaintiff originally held from Reed 1,963 shares of stock belonging to Reed, of which he subsequently bought 500 shares outright, for which he paid Reed; leaving, therefore, only 1,463 shares. Now, the defendant, recognizing his liability as guarantor of the $15,000 note of Reed, and claiming to be no longer liable on Reed's $10,000 note, on July 12, 1892, caused the amount thereof and the interest accrued thereon—namely, $16,100—to be tendered to the plaintiff by Guggenheimer & Cornish, which tender was conditioned upon the return by plaintiff to the defendant of the 1,463, if not 1,963, shares of stock pledged by Reed for the payment of both notes. This tender was refused by the plaintiff on the ground that it was insufficient, because the defendant still was liable on both of Reed's notes; and, if this claim is well founded, then the subsequent tender made by plaintiff on November 15, 1892, on account of defendant's own notes in suit, was clearly insufficient, on that ground alone. We therefore have to go back to see whether on July 12, 1892, the defendant still was liable on the $10,000 note of Reed. The said note had not been presented for payment at maturity, had not been protested for nonpayment, and the defendant, as indorser, had not been served with notice of protest. Under ordinary circumstances,—that is to say, if the defendant's liability had been that of an indorser only,—he would have been discharged from liability thereon for the reasons stated; but the plaintiff claims, and testifies, in effect, that, although the transaction culminating in said note was ostensibly for the benefit of Reed, it was in reality for the benefit of the defendant, and pursuant to his request; that it was agreed between plaintiff and the defendant that the payment of both Reed's notes should be provided for in the agreement which was subsequently consummated between them in August, 1891; and that the nonpresentment of the $10,000 note for payment, and its nonprotest, were omitted by special request of the defendant. Now, this the defendant, in turn, denies, and consequently the jury would have to decide between the parties what the truth was, if the case were to go to them. If, then, the jury should believe the defendant's version, the tender of $16,100 on July 2, 1892, was sufficient on both of Reed's notes, although even then the question of law would remain, whether, though the plaintiff could no longer be sued as indorser, the plaintiff did not, after all, continue to have the right to hold on to the collaterals,—a question which I will not now stop to consider; but, if the jury would not believe him, but, in preference, believed plaintiff's version upon that point, then the tender of July 2, 1892, was clearly insufficient, unless the defendant stood discharged as to the Reed notes by another transaction, which had taken place between the plaintiff and Cassius H. Reed,

as to certain lands of Reed in West Virginia. Upon that point the parties also differ; the plaintiff claiming that the conveyance to him by Reed of said lands was by way of additional security merely, while the defendant claims that it was taken in absolute payment of Reed's notes. This might, perhaps, present a question of intention of the parties, to be determined by the jury as a question of fact, if the case had to be submitted to them. But all these questions of fact arising out of the obligations of Reed, which were indorsed or guarantied by the defendant, which would otherwise have to be submitted to the jury, may be left undetermined, because there still remains one obligation on the part of the defendant himself against which the plaintiff had the right to hold the bonds in question. I refer to the obligation not to foreclose the mortgage. That this obligation was a substantial obligation was subsequently demonstrated when the mortgage, at the instigation of the defendant, was foreclosed. The defendant could only be relieved from it by something which superseded it, or estopped the plaintiff from enforcing it. The evidence fails to show any such element. There was no waiver and there was no breach of the contract on plaintiff's part. The fact that it was not insisted on at the time the tender of $16,100 was made cannot help the defendant, because such tender was made to get the two Reed notes back, and the collaterals which Reed had pledged therefor. It was not made in discharge of all the obligations of the defendant. Moreover, when the tender of November 15, 1892, was made by the defendant as the basis for getting his own collaterals back, the obligation of the defendant against the foreclosure of the mortgage was expressly insisted upon.

Great stress has been laid by defendant's counsel on the claim made by him, that, if the appellate division had considered this obligation of the defendant as an enforceable one, they never would have granted a new trial. But that conclusion does not necessarily follow. Having been impressed with the theory that something had been concealed concerning the West Virginia land transaction, which, if known at the time of the trial, might have benefited the defendant as to the Reed notes, the court may well have concluded that, in the interest of doing exact justice, the defendant should have another chance to litigate his entire counterclaim once more. This is sometimes done in exceptional cases. At any rate, as nothing was decided as to defendant's obligation not to foreclose the mortgage, I cannot shirk my duty by speculating upon what might perhaps have been in the minds of the court on that occasion. Having reached the conclusion that at the time of the tender of November 15, 1892, the plaintiff had the right to continue to hold the bonds in suit as collateral security against the obligation of the defendant not to foreclose the mortgage, and that that constitutes sufficient ground for granting plaintiff's motion for the direction of a verdict, it would serve no useful purpose to submit the case to the jury upon the questions indicated by me as to which there is conflict of testimony.

Plaintiff's motion for the dismissal of defendant's counterclaim and for the direction of a verdict in plaintiff's favor must therefore be granted, and defendant's motion for leave to go to the jury denied. Ordered accordingly.