CHARLES GOTTHELF, Respondent, *v.* JAMES S. T. STRANAHAN,
Appellant.

Defendant contracted to sell and convey to plaintiff, free from all incum-
brances, by warranty deed, upon a day stated, and upon payment at
that time of a portion of the consideration, certain premises in the city
of Brooklyn ; the premises were at the time unfenced and commons,
and were partly under water. By mutual consent of the parties the
performance of the contract was delayed from time to time for a period
of about three months. The first postponement was for the accommo-
dation of plaintiff, the others were to enable defendant to clear off from
the land certain squatters thereon. After the day fixed by the contract
for performance, and during the period performance was so delayed,
certain assessments were levied upon the land and confirmed by the city.
In an action to compel specific performance, the question was as to
whether defendant was required to warrant against the assessments.
These assessments were for the improvement of two streets, one of which
had no existence except on the city map, and was mostly under water;
the other was an ordinary road. These contemplated improvements have
not been made. *Held*, that the consideration fixed by the contract was
presumably that based on the value of the land in its existing condition;
that as the assessments were not for improvements made, but were laid
as authorized by the city charter (Tit. 19, §§ 1–8, chap. 583, Laws
of 1888), for improvements contemplated, which the city might
abandon, and which if made would enhance the value of the prop-
erty, they were not incumbrances within the meaning of the contract,
and so, were not covered by the covenant of warranty.
Also *held*, that if the contract by its true interpretation imposed upon
defendant the legal obligation to pay said assessments, this did not as
matter of legal right entitle plaintiff to relief by way of specific per-
formance; but that the granting of such relief is discretionary with
the court, and as in this case it would be inequitable to grant it,
it should be denied.

(Argued April 12, 1893; decided June 6, 1893.)

APPEAL from judgment of the General Term of the City
Court of Brooklyn, entered upon an order made May 27,
1892, which affirmed a judgment in favor of plaintiff entered
upon a decision of the court on trial at Special Term.

This was an action for the specific performance of a con-
tract for the sale of certain real estate in the city of Brooklyn,

and was brought by plaintiff as assignee of the original vendee.

The facts, so far as material, are stated in the opinion.

*William C. De Witt* for appellant. Apart from the contract it cannot be claimed that the payment of the assessments in dispute is expressly imposed upon the vendor by the terms of any of the stipulations postponing the transfer of title. (*Smith* v. *Kidd*, 68 N. Y. 130.) Equity will not decree a specific performance of a contract in a manner which would work injustice and bring about results not within the intent or understanding of the parties in making the bargain. (*Willard* v. *Tayloe*, 8 Wall. 564; *Fitzpatrick* v. *Dorland*, 27 Hun, 291, 294; *Hubbell* v. *Von Schoening*, 49 N. Y. 326, 330, 331; *Margraf* v. *Muir*, 57 id. 158; *Trustees of Columbia College* v. *Thacher*, 87 id. 311, 317; *Corwin* v. *Arnold*, 58 Hun, 437; *Worrall* v. *Mumm*, 38 N. Y. 137; *Smith* v. *Sturgis*, 108 id. 502; *Post* v. *Leet*, 8 Paige, 336; *Dowdney* v. *Mayor*, etc., 54 N. Y. 186; *De Puyster* v. *Murphy*, 66 id. 622.) Equity will not compel a vendor to convey real property, enlarged, improved and benefited by act of public law at his enforced expense, after the contract of sale had been made, without any allowance therefor. Such a rule would compel the vendor to deliver another, better and greater thing than that purchased or sold; which would be against conscience and fair dealing. Equity will, therefore, not compel a vendor to pay for improvements to be put upon the lands he has sold after the delivery of deed and possession pursuant to assessments, in advance, laid subsequent to the contract of sale. Neither the vendor nor the vendee could have had such improvements in mind, as part of the lands purchased; and the vendor is not entitled to receive an enlarged and improved estate without yielding any equivalent therefor. (*Post* v. *Leet*, 8 Paige, 336; *Dowdney* v. *Mayor*, etc., 54 N. Y. 186; *De Puyster* v. *Murphy*, 66 id. 622.)

*George G. Reynolds* for respondent. Defendant was not in a position to give a title "perfect, in fee simple, and free

from incumbrance," as he had bound himself to do. He employed Mr. Dutcher as his attorney to clear the title and to get the necessary adjournments from time to time, amounting in all to just three months. These extensions were necessarily alterations of the contract by substituting one time of performance for another. (*Clark* v. *Dales*, 20 Barb. 42; *Evan* v. *Thompson*, 5 East, 189; *Hasbrouck* v. *Tuppan*, 15 Johns. 200; *Holmes* v. *Holmes*, 12 Barb. 138.) The defendant availed himself of the last adjournment, for by it he took further time to serve his convenience, and saved himself from being in default. Having made use of the extension he cannot be permitted to repudiate any of its terms while reaping its benefits. (10 N. Y. 335; 1 id. 433; 28 id. 389; 31 id. 611.) Defendant comes into court, and by his answer demands that the contract be specifically performed. And that is the only adequate remedy the plaintiff has. Both parties ask it. The only duty of the court, then, is to ascertain the contract and enforce it. The court cannot make a new contract and enforce that. It must simply say where rests the burden of these assessments as the contract stands, and direct their payment accordingly. (*Crisfield* v. *Murdock*, 127 N. Y. 315, 320.)

ANDREWS, Ch. J. The original contract, made on the 7th day of January, 1891, was by its terms to be completed by a conveyance and payment of the unpaid purchase money on the 9th day of February in the same year. The vendee was to pay for the property the sum of $22,500 as follows : $2,000 on the execution of the contract, $4,750 on the execution of the deed, and the balance of $15,750 in five years, with interest, to be secured by mortgage on the land. The vendor was to convey the land by warranty deed in fee simple, free from all incumbrance. The vendee, on the execution of the contract, paid the sum of $2,000 as provided. If the contract had been performed on the 9th day of February, 1891, according to its terms, the question now presented would not have arisen. The assessments had not then been laid, and if the deed had been given on that day, they would have become

a charge on the land subsequent to the conveyance, and the defendant would have been under no obligation, legal or equitable, to pay them. They would have attached as a charge upon the title acquired by the plaintiff. But by the mutual assent of the parties the completion of the contract was postponed from time to time, in all for a period of three months, until May 9, 1891. The first postponement, until February 16, 1891, was for the accommodation of the plaintiff. The others were for the accommodation of the defendant, to enable him to clear the land of squatters who had gone upon it without permission and erected shanties and hovels in which they lived and between whom and the defendant in some cases an irregular sort of tenancy had grown up by the payment and receipt from time to time of small sums as rent. During this period of three months two assessments on the property for local improvements were laid and confirmed by the city of Brooklyn; one on the 3d day of March, 1891, for $901.12 for the grading and paving of Bush street, and one on the 28th day of April, 1891, for $1,079.33 for the grading and paving of William street.

This action is brought by the vendee against the vendor to compel a specific performance of the contract of sale. The defendant is ready and willing, and has offered to convey the premises with covenant of warranty as of the 9th day of February, 1891, the day originally fixed for the execution of the deed. The plaintiff insists that the vendor is bound to warrant the title as against the assessments mentioned. This is the controversy in the case, and the point for determination is whether the plaintiff upon equitable principles is entitled to the relief he seeks and to cast upon the defendant the burden of paying the assessments. He does not ask to be relieved from the contract. He elects to have a decree for performance upon such conditions as the court shall determine, in case it shall be held that upon principles of law or equity he is not entitled to demand a covenant by the defendant covering the lien created by the assessments.

The premises contracted to be sold consisted of a block and

part of a block of land in one of the outlying wards of
Brooklyn, which, when the contract was made, was partly cov-
ered by water and was unfenced and commons.   Bush street,
adjoining the southerly side of the land, was a traveled road
and had been such for many years.   It was graded to some
extent, but had not been paved.   It was an ordinary country
road.   One of the assessments was for the contemplated
improvement of Bush street.   William street, to which the
other assessment related, was mostly under water.   In view of
the peculiar system of local improvements prevailing in Brook-
lyn, one question presented is, whether the assessments in
question constituted incumbrances on the land in May, 1891,
when the defendant offered to convey, within the true mean-
ing of the contract of sale.   The charter of Brooklyn is
unique in respect to its system of local improvements.   The
district of assessment is to be prescribed and the estimated
cost of contemplated local improvements is required to be
assessed on the district benefited, and a warrant for the col-
lection of the assessments issued, and at least one-third of the
aggregate assessment must have been collected before any con-
tract for making the improvement is authorized to be made,
and the city may, even after the assessments have been collected,
decline to make a contract, or to go on with the improvement,
and may discontinue the proceedings, returning the money
collected on the assessments.   (Laws of 1888, chap. 583, tit.
XIX, §§ 1 to 8 inclusive.)   In other cities, assessments for
local improvements follow the performance of the work.
In Brooklyn they precede the execution and are collectible
in advance.   The contemplated improvements of Bush and
William streets, for which the assessments in question were
laid, have not yet been made.   There is no explanation
of the delay.   When the proceedings were initiated does
not appear, and referring to the charter provisions there
can be no inference that any step whatever had been
taken when the contract of sale was executed, or prior
to the 9th of February, 1891, when, by the original con-
tract, the deed was to have been given.   The parties

entered into a contract for the sale of unimproved land. The consideration to be paid and received was presumably based on the value of the land in its existing condition. William street had no existence except on the city map, and Bush street was an ordinary road. Whether this condition would be changed at any time, and whether William street would be raised and made dry land, and Bush street be improved and brought to the condition of an ordinary city street, could not be known by the parties to the contract. If they anticipated that at some time the city would enter upon the improvement of this section of the city, they knew that any charge which might be imposed on the property embraced in the contract, for the expense of such improvement, would represent the benefit received by it from the improvement, as the theory of such assessment is that the value of the land would be enhanced by at least an equivalent amount. It is impossible to suppose that the parties contemplated when the contract was executed that incumbrances created by the force of public law for improvements initiated after the making of the contract and intermediate that date and the time fixed for the conveyance, should be paid by the vendor. If the contract can have this construction, then the plaintiff is entitled to property not in the condition it was in when he contracted to purchase it, but an improved estate, improved at the expense of the vendor by the act of the city, which he could not control, initiated after the contract was made. This construction would compel the vendor to pay out of the purchase money the cost of an improvement which by so much has increased or will increase the value of the property, and the vendee would acquire property which he did not pay for.

The question as to the true meaning of the contract to convey free from all incumbrances is quite different from that which would be presented by an assessment made intermediate the date of the contract and the time fixed for the conveyance for a local improvement made before the contract was entered into. In that case the purchaser buys with the improvements made and presumably pays a price fixed with reference to the

land in its existing condition. The case of periodical taxes for the support of government, assessed and laid between the date of a contract and the time fixed for the conveyance, would constitute an incumbrance within the meaning of the covenant. The time of the imposition of such taxes is known in advance, and unless excepted from the covenant would be deemed to be covered thereby. But under the charter of Brooklyn assessments for local improvements are made in advance of the execution of the work. They represent, or are supposed to represent, benefits thereafter to be secured to the property assessed. The time when improvements will be initiated cannot be known. The contract to convey free from incumbrances ordinarily has reference to incumbrances or liens actually existing when the contract is executed, or thereafter created, or suffered by the act or default of the vendor. While the assessments in question constituted, under the charter of Brooklyn, liens on the lands assessed from the time of their confirmation by the common council, and are in a strict sense incumbrances thereon, we are of opinion that they are not incumbrances within the meaning of the contract. They did not diminish the value of the subject of the contract. The plaintiff will acquire what the defendant intended to sell and what he expected to receive, and but for the postponement of the time of the execution of the deed the plaintiff would have taken his title before the assessments were laid. This incident ought not to impose upon the defendant a loss *pro tanto* of so much of the purchase money.

But even if the contract by its true interpretation imposes upon the defendant the legal obligation to pay the assessment, this is not decisive of the right of the plaintiff to relief by way of specific performance. This equitable remedy cannot be claimed as a matter of right. It is discretionary with the court to grant or withhold it in furtherance of justice, or to prevent injustice. Where by reason of circumstances attending the making of the contract, such as fraud, accident, mistake, or where unconscionable advantage has been taken, or where by reason of circumstances which have intervened

between the making of the contract and the bringing of the action, the enforcement of the equitable remedy would be inequitable and produce results not within the intent or understanding of the parties when the bargain was made, and there has been no inexcusable *laches* or inattention by the party resisting performance, in not foreseeing and providing for contingencies which have subsequently arisen, the court may and will refuse to specifically enforce the contract, and will leave the party to his legal remedy. The cases are very numerous under this head, and no hard and fast rule can be formulated by which it can be readily determined how the discretion of the court in a given case should be exercised. But it seems to us to be very clear that to enforce the contract in this case by requiring the defendant to covenant against the assessments in question, would violate the spirit of the contract and convert the equitable power of the court into an instrument for the accomplishment of rank injustice. The case of *Willard* v. *Tayloe* (8 Wall. 564) contains an able discussion of the principles governing the courts in administering relief by way of specific performance of contracts, and Mr. Justice FIELD, in his opinion in that case, so fully cites the authorities that a further reference to them here is unnecessary.

We think the judgment of the Special and General Terms should be modified by excepting from the scope of the covenant in the deed to be given by the defendant, the assessments in question, and that, as modified, the judgment should be affirmed, with costs to the defendant in all courts.

All concur.

Judgment accordingly.