ABRAHAM CHARLES FINKEL and RAPHAEL FINKEL, Appellants, *v.* ARNOLD KOHN and THE STATE BANK, Respondents.

*Written contract to convey property which may be bought in at a foreclosure sale — construction thereof in disregard of the exact terms of the agreement — when equity will not specifically enforce it.*

After a judgment of foreclosure and sale had been entered in an action brought by a bank to foreclose a second mortgage, one Kohn, the vice-president thereof, having no interest in the mortgage except as an officer of the bank, on the day before the foreclosure sale entered into an agreement with one Finkel, under the terms of which the premises were to be purchased at such

sale by Kohn, at a price not to exceed a certain sum over the amount secured by the first mortgage and interest, and were to be held by him for a specified time, at the expiration of which, or at any prior time, the said Finkel was to have the privilege of redeeming the premises by paying to Kohn whatever sum he might have paid on or for such property, with interest thereon up to the date of such redemption, "it being understood that said Arnold Kohn is to be paid sufficient, so that no loss whatever will enure to him or his assigns by reason of such purchase, this to include all charges he may have paid for legal services rendered, or to be rendered, interest on first mortgage, costs of action now pending to foreclose the same, and any charge for extension of said mortgage."

*Held,* that, although the mortgaged premises were purchased by Kohn at the sale for less than the amount due upon the second mortgage, Kohn should not be compelled, except upon the payment of the whole amount due to the bank upon such second mortgage, including the expenses of foreclosure, to convey them to Finkel, it being evident from the circumstances surrounding the transaction that the agreement was intended to enable the mortgagor to again become the owner of the mortgaged premises upon paying the amount which they had cost Kohn or the bank, and that Kohn was acting therein simply as an officer of the bank and to protect its interests, and that, so far as the agreement provided otherwise, it did not correctly express the understanding between the parties;

That, as to require a specific performance of the contract, by compelling a conveyance of the property by Kohn for the amount for which it was purchased by him, would violate the real object which was in the contemplation of the parties, and would produce a result not contemplated by any of them at the time of the execution of the agreement, the court, in the exercise of its judicial discretion, might properly refuse specifically to enforce it, leaving Finkel to his remedy at law to recover any damage which he sustained if any valid contract with him had been broken by Kohn or the bank.

APPEAL by the plaintiffs, Abraham Charles Finkel and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 7th day of September, 1898, upon the report of a referee, dismissing the plaintiffs' complaint.

*Simon Sultan,* for the appellants.

*Benjamin N. Cardozo,* for the respondents.

INGRAHAM, J.:

The action was brought to compel the defendants to convey to the plaintiffs a piece of property in the city of New York upon payment of the amount that the defendant Arnold Kohn had paid for said property, with the costs and expenses incurred in its purchase.

A copy of the agreement is annexed to the complaint. The answer admits the execution of the agreement, alleges that the plaintiffs failed to comply with their agreement by refusing to pay the amount due thereunder, and, as a counterclaim, alleges that the agreement, as insisted upon by the plaintiffs, did not correctly express the understanding between the parties, and asks that the agreement be reformed. The referee refused to reform the contract upon the ground that it was not satisfactorily proved that the plaintiffs clearly understood the agreement they were executing, or that the minds of the parties ever really met upon any definite understanding; but decided that it was not equitable to decree specific performance, and, therefore, dismissed the complaint, leaving the plaintiffs to their remedy at law.

The situation existing at the time this agreement was executed was as follows: One Annie Petchaft was the owner of the premises described in the complaint, which were subject to a mortgage of $10,000, and a second mortgage to secure the payment of certain notes aggregating the sum of $2,073.32, which was held by the defendant the State Bank, of which institution the defendant Kohn was the vice-president. This second mortgage had been foreclosed and a judgment had been entered, under which the property was to be sold on the 19th day of July, 1894. The defendant Kohn had no interest in this property and no interest in the mortgage, except as an officer of the State Bank. On July eighteenth, the day before the sale, the plaintiff Abraham C. Finkel, Bernard Petchaft, the husband of Annie Petchaft, the owner of the property in question, and the defendant Kohn met at the office of the attorney of the State Bank, who was foreclosing the mortgage, when this agreement, which the action is brought to enforce, was executed. The agreement in form is between the defendant Arnold Kohn and R. Finkel & Son, a copartnership composed of the plaintiffs. By this agreement the premises No. 236 Madison street were to be purchased by the defendant Kohn at the foreclosure sale thereof to be held on the 19th day of July, 1895, Kohn not to be required to bid more than $3,000 over the first mortgage and interest, and it was to be held by him or his assigns until the 18th day of November, 1895. The agreement then provided that if on that day, or any time prior

thereto, the said R. Finkel & Son, or their assigns, choose to redeem the said property by paying to Arnold Kohn, or his assigns, whatever sum of money he may have paid on or for said property, with interest up to date of such redemption, the said Kohn, or his assigns, should convey said property to said R. Finkel & Son, or his assigns, "it being understood that said Arnold Kohn is to be paid sufficient, so that no loss whatever will enure to him or his assigns by reason of such purchase, this to include all charges he may have paid for legal services rendered, or to be rendered, interest on first mortgage, costs of action now pending to foreclose the same, and any charge for extension of said mortgage." It was also provided that "a further contract to carry out all the above is to be made after the purchase of said premises by said Arnold Kohn, and said contract is to contain a clause that time is the essence of the contract."

Considering the situation and relation of the parties, the object for which this contract was made, and the form adopted, it is, I think, apparent that the intent was to enable the plaintiffs to redeem this property from the sale about to take place if they were able to pay the amount due upon the mortgage which had then been foreclosed, and that the confusion arose because of the practical identification of the defendant Kohn and the State Bank, of which he was an officer and for which it was evident he was acting. The property was about to be sold under a foreclosure of the mortgage held by the State Bank, and it is evident that the Petchafts were not in a position to purchase the property at the sale. To protect the bank it was necessary that the price for which the property was sold should be an amount equal to that due on its mortgage. The agreement contained no obligation of the plaintiffs, or anybody else, that Kohn or the State Bank should be repaid any amount that should be bid for the property at the sale. Kohn was to buy the property and deed it to the plaintiffs, who had been procured by Petchaft for the evident purpose of enabling the Petchafts to again become the owners of the property upon paying the amount which it had cost Kohn or the State Bank. There could be no possible motive for Kohn to make such an agreement except to give Petchaft an opportunity of redeeming the property; and it certainly could not be supposed that Kohn or the State Bank would make such an agreement except upon condition of Petchaft's paying the amount

due upon the mortgage. As before stated, Kohn had no interest in this property; no interest in the mortgage, and no interest in either the plaintiffs or Petchaft, except so far as he was an officer of the bank, interested in procuring for it the amount of its mortgage. While the agreement, in the form in which it was drawn, failed clearly to express this intention of the parties, it seems that the mistake arose because of the practical identification of Kohn with the State Bank, and the evident idea in the mind of the draftsman that that relation was understood. The provision that Kohn was "to be paid sufficient so that no loss whatever will enure to him or his assigns by reason of such purchase" evidently contemplated that the State Bank should be protected. The contract as executed was informal and contemplated a final formal agreement for the sale in case the property was bid in by Kohn. The State Bank was the real party in interest and Kohn was its representative, and this was clearly understood by all the parties. If Kohn had bid at the foreclosure sale an amount equal to the amount due on the mortgage there would have been no dispute as to the amount that the plaintiffs would be required to pay to entitle them to a conveyance; and the fact that he bid a less sum, considering the fact that his sole action in the matter was as an officer in the State Bank, and that his object was to protect the bank's interest, viewing the actual agreement that was made in the light of the relation of the parties to the property that the evidence disclosed, would make no difference as to the amount that the plaintiffs were bound to pay to entitle them to a conveyance of the property. Taking, therefore, this contract as it stands, viewing it in the light of the circumstances that existed at the time it was executed, and considering the evident object sought to be attained, it would seem that the real intent was to allow Petchaft, or the plaintiffs as his appointees, an opportunity to redeem from the foreclosure sale by paying the amount due upon the mortgage to the State Bank, together with any additional expense that the State Bank or the defendant should be subjected to in order to obtain good title to the property. Turning to the evidence as to the actual agreement between the parties, this is clearly borne out by the testimony of the defendant Kohn, and of Mr. Lyon, his attorney. Kohn testifies that Petchaft came to him as vice-president of the State Bank and stated that he (Petchaft) was very

anxious to redeem his house in Madison street, which was then about to be sold under foreclosure ; that he could not take the title to the house either in his own name or that of his wife, but wanted to redeem the property and take it in the name of Finkel, who was about to marry his daughter ; that he wanted to see that the bank was paid, " and that we could get every cent that was due to us, and he wanted me to bid up even beyond the amount that was due the Bank. I told him that I would not do that unless we had some security that he would redeem, and he said he could not push Finkel for any more money, because he already had loaned some, but that Finkel would give us his note to cover us for any damage that we might sustain," and wanted Kohn to go to Lyon's office on the day before the sale and make some sort of an agreement ; that on that day Petchaft, Finkel and Kohn went together to Mr. Lyon's office and explained the matter to him, Lyon being at that time the attorney for the bank in foreclosing the mortgage. Kohn told Lyon that he was to draw an agreement by which Finkel, when he took the property, should pay the bank the entire indebtedness, and a statement of such indebtedness was then made up. This was said in the presence of Petchaft and Finkel, and then Mr. Lyon drew the agreement which is sought to be enforced. This testimony is corroborated by Mr. Lyon, who testified that in drawing up this agreement he intended to express the agreement which had been entered into between Petchaft and Kohn ; that it was done in Petchaft's presence and with his assent, and was then executed.

That this was the agreement between the parties is clear. The note to be given by the plaintiffs for $500 was a rather clumsy way of providing for the repayment to Kohn of the expenses of the transaction in case Finkel should not redeem within the time fixed. The testimony of Finkel and Petchaft, while formally denying these allegations as to the actual agreement made, is most unsatisfactory. Except as to mere denials they contradict each other at every material point. Finkel endeavors to make Petchaft his broker, engaged in procuring for him a cheap bargain, for which he was to receive a commission. This Petchaft denies. Finkel says at the time he was not engaged to Petchaft's daughter, and did not contemplate becoming his son-in-law. Petchaft says that Finkel at the time was contemplating an engagement, and that their relation was understood.

Finkel insists upon it that Kohn was the owner of the $10,000 mortgage and that he (Kohn) owned the property and was selling it. But at that time the property was owned by Petchaft's wife, and it was perfectly understood that neither Kohn nor the State Bank had any interest in the first mortgage. Petchaft knew that Kohn was the vice-president of the bank, was acting for it and had dealings with him in that capacity. From the testimony it would seem clear that Finkel understood that he was to repay to Kohn what the latter should pay for the house, and that Kohn was to pay for the house the amount due to the State Bank, notwithstanding the evident endeavor of Finkel and Petchaft to gain an advantage over the defendants by reason of the loose way in which the agreement was drawn, and the fact that Kohn at the auction sale bid less than the amount due the State Bank.

We think that, upon this testimony, the referee might well have decreed the reformation of the agreement asked for by the defendants. The plaintiffs, however, have persistently refused and still refuse to recognize the plain agreement between the parties, or to pay the amount due to the State Bank upon the mortgage which had been foreclosed, repudiating their agreement to protect the defendants by paying to them the amount due upon the mortgage as a condition for their right to a conveyance of the property. They did not ask upon the trial, nor do they ask upon this appeal, a right to a conveyance upon payment of this amount which we think was clearly within the contemplation of the parties at the time the agreement was made. A specific performance of an agreement of this character is addressed to the sound judicial discretion of the court. " Where by reason of circumstances attending the making of the contract, such as fraud, accident, *mistake*, or where by reason of circumstances which have intervened between the making of the contract and the bringing of the action, the enforcement of the equitable remedy would be inequitable and produce results not within the intent or understanding of the parties when the bargain was made, and there has been no inexcusable *laches* or inattention by the party resisting performance in not foreseeing and providing for contingencies which have subsequently arisen, the court may and will refuse to specifically enforce the contract, and will leave the party to his legal remedy." (*Gotthelf* v. *Stranahan*, 138 N. Y. 345, 351.)

" It is a well-established principle relating to this subject that specific performance will never be decreed where it would be inequitable. It is immaterial whether the fact that it is inequitable arises from the provisions of the contract, or from external facts or circumstances which affect the situation and relations of the parties, for in either case it may constitute a sufficient ground for a court of equity to withhold this peculiar relief, and to leave the parties to their legal remedy." (*Stokes* v. *Stokes*, 155 N. Y. 581, 590.)

We think that, in this case, the judgment may well be affirmed upon the ground that to specifically perform this contract as claimed by the plaintiffs would be to violate the real object that was in the contemplation of the parties, and would produce a result not contemplated by any of them at the time of the execution of the agreement ; and that the court, in the exercise of its judicial discretion, properly refused specifically to enforce it, leaving the plaintiffs to their remedy at law to recover any damage that they have sustained if any valid contract with them has been broken by the defendants, or either of them.

The plaintiffs were not entitled to a judgment requiring this note to be delivered up or canceled. It is not alleged that any attempt has been made by the defendants, or either of them, to enforce the note, or that the plaintiffs would not have an ample defense to the note if any such attempt were made.

Upon the whole case, we think that substantial justice has been done by the judgment and that it should be affirmed, with costs.

VAN BRUNT, P. J., BARRETT, RUMSEY and McLAUGHLIN, JJ., concurred.

Judgment affirmed, with costs.