(120 App. Div. 692)

### BYRNE v. FREMONT REALTY CO.

(Supreme Court, Appellate Division, First Department.    July 15, 1907.)

1. AUCTIONS AND AUCTIONEERS—REVOCATION OF AUCTIONEER'S AUTHORITY.

Where, at an auction sale of defendant's property, defendant's president, who had also been bidding, immediately on the knocking down of the property to plaintiff, publicly stated to the auctioneer in plaintiff's presence that the highest bid had been made by him, and protested against the property being knocked down to plaintiff, and requested that the property be put up again, and on the refusal of the auctioneer to do so

stated that defendant would not deliver title under the sale, there was a revocation of the auctioneer's authority, so that plaintiff could not have the contract of sale enforced.

2. SPECIFIC PERFORMANCE.

Even if the revocation of the auctioneer's authority was not binding on plaintiff, where, immediately after the property had been knocked down to plaintiff at an inadequate price, defendant's president, who had at least made the same bid as plaintiff, publicly stated that he had made the bid and requested that the property be put up again, and on refusal of the auctioneer to do so stated that defendant would not deliver title under the sale, yet specific performance of the contract should be denied, as being inequitable.

Houghton and Lambert, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Cornelius E. Byrne against the Fremont Realty Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and LAMBERT, JJ.

H. B. Davis (Henry S. Mansfield, on the brief), for appellant.

Abraham A. Silberberg, for respondent.

INGRAHAM, J. This action was brought for the specific performance of a purchase of a piece of real property. The answer of defendant denied all the allegations of the complaint and set forth that the alleged contract of sale was void under the statute of frauds. The court found that the defendant was the owner of a certain piece of land in the city of New York, which included the land described in the complaint: that the defendant engaged one George W. Bard as its auctioneer to sell this property, which said property was offered for sale at public auction by said auctioneer; that the said auctioneer duly struck down and sold to the plaintiff in the action the land described in the complaint for the sum of $5,880, which said sum was the bid made and offered by the plaintiff and accepted as the final bid for said lands by the auctioneer; that the plaintiff, after the said lands were knocked down to him, subscribed in duplicate a memorandum of his purchase, and delivered one of these memoranda to the auctioneer, and paid to the auctioneer on account of the purchase price the sum of $588, and received from the auctioneer a memorandum acknowledging payment by the plaintiff of the said sum on account of the purchase price of the land as aforesaid, signed by the auctioneer, with a duplicate of the original terms of the sale subscribed by the defendant; that by the terms of sale the deed to the property sold was to be delivered at the office of the auctioneer on January 19, 1906, at which time the balance of the purchase price over and above the mortgage was to be paid by the purchaser; that the purchaser at the time and place named tendered and offered to pay to the defendant the balance of the purchase price, and was ready and willing to comply with the terms of sale, but the defendant refused to convey the premises. The court also found that one Harry B. Davis, who was president of the defendant corporation, and other persons besides the plaintiff, made bids at such auction sale on the land described in the complaint; that said Davis

and the plaintiff were seated near to each other in the auction room; that after the bids for said lots reached $1,400 per lot the bidding was limited to the plaintiff and the said Davis; that a bid of $1,470 per lot was made at such auction sale, and after receiving such bid the auctioneer knocked down the lots to the plaintiff for that sum; "that immediately thereupon the said Harry B. Davis arose and publicly stated to the auctioneer, in the presence and hearing of the plaintiff, that the said bid of $1,470 per lot was his (Davis') bid, and protested against the said lots being knocked down to the plaintiff, and requested the said auctioneer to put the said lots up for sale again, which the said auctioneer refused to do; that upon the refusal of the said auctioneer to put up the said lots for sale again the said Harry B. Davis publicly stated in the presence and hearing of the plaintiff that the defendant would not deliver title under said sale;" that the payment of the 10 per cent. by the plaintiff and the execution of a receipt and memorandum of the sale was made after the said Davis had publicly claimed that the said bid of $1,470 per lot was his bid, after said Davis had publicly protested against the said lots being knocked down to the plaintiff on said bid, after the said Davis had publicly requested the said auctioneer to put said lots up again for sale, and after said Davis had publicly stated that the defendant would not deliver title under said sale to plaintiff; that the defendant declined to accept the 10 per cent. of the purchase price of said lots paid to the auctioneer. And as a conclusion of law the court found that the memorandum of purchase signed by the plaintiff and delivered to the auctioneer, together with the terms of sale read to and delivered unto the plaintiff, and the receipt of moneys on account of the purchase price signed by the defendant's auctioneer, together constituted a valid contract for the sale of the lands described in the complaint, and that the plaintiff is entitled to judgment directing the defendant to specifically perform said contract, and judgment was entered in accordance with this decision.

The terms of sale which were subscribed by the defendant provided that the premises described would be sold under the direction of the George W. Bard Real Estate Company, George W. Bard, aucti .:er, under the conditions that 10 per cent. of the amount bid was to be paid to the auctioneer at the time and place of sale, for which a receipt would be given, and 20 per cent. of the purchase money might be paid in cash on the delivery of the deed on the 19th day of January, 1906, at the office of the George W. Bard Real Estate Company; that 70 per cent. of the purchase money may be provided for to be paid by the purchaser assuming the mortgage now on the property and executing to the vendor a bond and mortgage to cover the difference existing between the 30 per cent. before mentioned and the amount of mortgage now on the premises, to be assumed by the purchaser; that the bidding would be kept open after the property is struck down, and in case any purchaser should fail to comply with the above conditions of the sale the premises would be put up for sale under the direction of the auctioneer under the same terms of sale, and the purchaser held liable for any deficiency. The memorandum of purchase executed by the plaintiff was as follows:

"I, C. E. Byrne, * * * have this day of December 19, 1905, purchased the premises shown by the numbers, diagram O, 31E, 31F, 31G, 31H, on auctioneer's map or diagram, or as read at the beginning of sale, by description in terms of sale, for the sum of $1,470 each, and I hereby promise and agree to comply with the terms and conditions of the above-mentioned sale as read at the beginning of said sale.

"December 19, 1905.

"[Signed]                                        Cornelius E. Byrne."

There was delivered to the plaintiff an instrument, dated the same day, which recited that there was received from "C. E. Byrne * * * the sum of $588 dollars, being 10% of the amount bid by ———— at auction sale held this date at ———— by the George W. Bard Real Estate Company, George W. Bard, auctioneer," and describing the property, signed, "The George W. Bard Real Estate Co., Auctioneer, Geo. W. Bard, per C. T. Strassle." The learned trial judge held that these instruments, taken together, were a sufficient contract in writing to satisfy the requirement of the statute of frauds.

I have serious doubts whether these memoranda, taken together, were a sufficient compliance with the statute; but assuming that they were, and that, if the authority of the auctioneer to complete the transaction had been unrevoked at the time the sale was actually made and the transaction completed by the payment of the 10 per cent. and the signing of the receipt by the auctioneer and the entry of the sale to the plaintiff in the auctioneer's book, a valid contract was evidenced by the writing, it seems to me clear that the authority of the auctioneer to proceed further with the sale was revoked by the president of the defendant in the presence of the plaintiff. Immediately upon the auctioneer's announcing that he had accepted plaintiff's bid, the president of the defendant publicly and in the presence of the plaintiff objected to the bid being received by the auctioneer, as such bid was not the bid of the plaintiff. The president of the defendant and the plaintiff were at the time the only bidders for the property. When the auctioneer announced that he had accepted plaintiff's bid, the president of the defendant at once protested against awarding the property to the plaintiff, claiming that it was his bid that had been made at the price named, and insisting that the property should be again exposed for sale. At this time no memorandum of any kind had been made. The only authority that the auctioneer had to make a sale of the property or to sign a memorandum of sale which would bind the defendant was the authority conferred upon him by the defendant under the terms of the sale. It cannot be disputed but that, at any time prior to the completion of a valid sale evidenced by some memorandum in writing, the defendant could revoke the authority of the auctioneer to sell the property. When the auctioneer refused to comply with the request of the president of the defendant and insisted that he had knocked the property down to the plaintiff as the highest bidder, when in fact he was not, the president of the defendant publicly notified the auctioneer in the presence of the plaintiff that the defendant would not comply with the contract and would not deliver title under the said sale. As before stated, this was before a legal contract had been made—before there had been any entry of the sale to the plaintiff, or any instrument of

any kind signed by either the plaintiff, auctioneer, or the defendant, or anything which evidenced the sale.

Whether or not the plaintiff knew that ,Mr. Davis was an authorized representative of the company, there was a statement made in his presence to the auctioneer, which was heard and understood by the auctioneer, who was assuming to act as the defendant's agent in making the sale, that his authority to make that particular sale had been revoked, and that the company would not recognize it or comply with it. The authority of the auctioneer to proceed further was thereby revoked, and what he did subsequently was not as agent of the defendant. A statement by the person under whose authority the sale was being conducted that the defendant revoked the authority of the auctioneer and would not carry out the contract having been made in the presence of the alleged purchaser, he was then charged with notice of the fact that a person claiming to have authority to act for the defendant had revoked the agency, and, if such person as a fact had the power to revoke such agency, then the act of the agent after the revocation of his authority could not bind the defendant. There is no question but what the authority of Mr. Davis as representing the company was known to the auctioneer, and that he had actual authority to revoke the agency of the auctioneer; and actually revoking such authority in the presence of the plaintiff was sufficient notice to the plaintiff that he could not accept an act of the auctioneer and hold the defendant. I think, therefore, upon the findings of the learned trial judge, that the authority of the auctioneer to continue this sale was revoked, and that his subsequent entering the sale in his book, and delivering the receipt to the purchaser, and accepting from the purchaser 10 per cent. of the purchase price, was not under any authority of the defendant, and for that reason the plaintiff was not entitled to specifically enforce the contract against the defendant.

But, assuming that this revocation of authority did not bind the plaintiff, I do not think that a court of equity should specifically enforce a contract made under such circumstances. The general rule under which a court of equity acts in determining whether or not the specific performance of a contract should be enforced is well settled, Judge Martin in Stokes v. Stokes, 155 N. Y. 581, 590, 50 N. E. 342, 345, says:

"Specific performance will never be decreed where it would be inequitable. It is immaterial whether the fact that it is inequitable arises from the provisions of the contract, or from external facts or circumstances which affect the situation and relations of the parties; for in either case it may constitute a sufficient ground for a court of equity to withhold this peculiar relief and to leave the parties to their legal remedy."

In Heller v. Cohen, 154 N. Y. 299, 48 N. E. 527, it is said that:

"The right of specific performance by a decree of a court of equity rests in judicial discretion, and may be granted or withheld upon a consideration of all the circumstances and in the exercise of such discretion."

And in Gotthelf v. Stranahan, 138 N. Y. 345, 34 N. E. 286, 20 L. R. A. 455, it was said:

"But even if the contract by its true interpretation imposes upon the defendant the legal obligation to pay the assessment, this is not decisive of the

right of the plaintiff to relief by way of specific performance. This equitable remedy cannot be claimed as a matter of right. It is discretionary with the court to grant or withhold it in furtherance of justice, or to prevent injustice. Where by reason of circumstances attending the making of the contract, such as fraud, accident, mistake, or where unconscionable advantage has been taken, or where, by reason of circumstances which have intervened between the making of the contract and the bringing of the action, the enforcement of the equitable remedy would be inequitable and produce results not within the intent or understanding of the parties when the bargain was made, and there has been no inexcusable laches or inattention by the party resisting performance in not foreseeing and providing for contingencies which have subsequently arisen, the court may and will refuse to specifically enforce the contract, and will leave the party to his legal remedy. The cases are very numerous under this head, and no hard and fast rule can be formulated by which it can be readily determined how the discretion of the court in a given case should be exercised."

See, also, Willard v. Tayloe, 8 Wall. 564, 19 L. Ed. 501.

Under the circumstances disclosed in this record I think this contract, if there was one, should not be specifically enforced. The property was to be sold at auction by the defendant corporation to the highest bidder. Exposing property for sale under such circumstances is based upon the understanding that there should be a reasonable opportunity to all bidders to make their bids, and it is the person willing to give the highest price for the property to whom the defendant was to convey. We may assume that the two parties who were bidding for the property each made a bid, and the auctioneer, noticing one bid and not the other, accepted the bid of the party that he had noticed. His attention was at once called to the mistake, and a request to open the sale, so as to enable it to be ascertained which of the two parties making the bid would be willing to give the most for the property, was made by one bidder, who also represented the vendor at the sale, which request the auctioneer refused. Unless the auctioneer is to be convicted of deliberate fraud, of which there is no evidence, there was here a clear case of a mistake, upon which was based the act of the auctioneer in accepting the plaintiff's bid as the highest bidder, when in fact it was not. The evidence seems to be undisputed that the price bid for the property was quite inadequate, and that, if the auctioneer had continued to receive bids after the mistake that he had made, it is a reasonable inference to be drawn from the testimony that a higher price would have been obtained for the property. The immediate repudiation of the transaction by the vendor to the auctioneer in the presence of the plaintiff, and the persistent refusal of the vendor to recognize the authority of the auctioneer to proceed further and to give a contract which would bind the defendant, releases the case from any question of laches by the defendant. It seems to me that there was here presented a clear case of a contract based upon a mistake which went to the very essence of the agreement, the acceptance by the auctioneer of the plaintiff's bid, and that under such circumstances it would be most inequitable for a court of equity to specifically enforce the contract. The court should have left the parties to their action at law to recover such damage as the law awards for the breach of such a contract. Where the auctioneer had clearly acted upon a mistake in announcing that the plaintiff had been the

highest bidder, when another bidder had made at least a bid for the same amount, it was the plain duty of the auctioneer to have again put up the property for sale and ascertain which of the contending bidders would be willing to pay the most for the property; and where, instead of performing this duty, he persistently insists upon recognizing the bidder that he saw and refusing to recognize another bidder, who claimed to have made a bid for the same amount, and refused to recognize the right of his employer or principal to repudiate his authority to proceed further and award the property to the bidder who was not the highest bidder, is a plain violation of what I conceive to be his duty. I certainly think that a situation is presented which justifies a court of equity in the exercise of its judicial discretion in refusing to specifically enforce the contract.

For the reasons stated, I think the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, P. J., and CLARKE, J., concur. HOUGHTON and LAMBERT, JJ., dissent.