MICBAR REALTY CORP., Plaintiff, *v.* TRUVAL REALTY CORP., Defendant.

TRUVAL REALTY CORP., Plaintiff, *v.* MICBAR REALTY CORP., Defendant.

Supreme Court, Special Term, Kings County, June 25, 1952.

*Samuel B. Terkeltoub* for Micbar Realty Corp.

*Morris Ehrlich* for Truval Realty Corp.

WALSH, J. Two actions have been tried together. Action No. 1 was instituted in this court by Micbar Realty Corp., hereinafter called Micbar, as vendor, to compel Truval Realty Corp., hereinafter called Truval, purchaser, specifically to perform a contract for the sale of real property known as 1452 Fulton Street, Brooklyn. Action No. 2 was instituted (before Action No. 1) in the Municipal Court by Truval against Micbar to recover the sum of $1,000 paid by Truval on the signing of the contract and also to recover expenses.

The property consisted of a plot of land 20 x 100, on which there was erected a four-story building with cellar, occupied as a store and three six-room, one-family apartments. In November, 1950, an application was filed with the department of housing and buildings to change the occupancy from the multiple dwelling class by altering the second floor for business purposes, erecting a one-story extension in the rear, making an opening from the existing building to the extension, opening a stairway from the first to the second floor and removing partitions from the second floor. This work had been at least substantially completed when the parties entered into a contract of sale one year later on November 17, 1951.

The contract made no mention of the alteration but did contain the following common provision with reference to violations: " All notes or notices of violations of law or municipal ordinances, orders or requirements noted in or issued by the Department of Housing and Buildings, Fire, Labor, Health, or other State or Municipal Department having jurisdiction, against or affecting the premises at the date hereof, shall be complied with by the seller and the premises shall be conveyed free of the same, and this provision of this contract shall survive delivery of the deed hereunder. The seller shall furnish the purchaser with an authorization to make the necessary searches therefor.''

At the time of the contract and the closing there were no violations of record. The contract provided that the title would close on or about December 28, 1951. At that time, an objection was raised by Truval that there was no certificate of occu-

pancy issued for the altered premises. The closing was adjourned to February 13, 1952.

Plaintiff's attorney, plaintiff's only witness, testified that at that time defendant rejected the title on two grounds: (1) that the plaintiff did not have a certificate of occupancy, and (2) that the statement showing the balance due on the existing mortgage was inadequate. This testimony was corroborated by the representative of the title company, who was also present. Plaintiff made a tender of performance but the defendant did not make a tender.

The second objection may be promptly disposed of. The printed form of contract had been modified so that the seller was required to deliver to the purchaser at the closing proof certifying as to the amount of the unpaid principal and interest thereon, date of maturity thereof, and rate of interest thereon. The record of the existing mortgage and the statement signed by the holder of the existing mortgage was ample compliance with this provision.

The first objection, the nonexistence of a certificate of occupancy, must be considered in relation to the cause of action for specific performance brought by Micbar and the action instituted by Truval for the return of the $1,000 paid on the signing of the contract. With reference to specific performance, " The general rule may be laid down that a court of equity in the exercise of its discretion granting such relief will refuse to grant a decree of specific performance of a contract where the performance would produce hardship or injustice to the defendant not reasonably within the contemplation of the parties at the inception of the contract; such hardship or injustice need not arise from fraud or mistake and need not be such as will prevent the contract from becoming obligatory in point of law, but exists whenever the contract would produce a condition unjust to the defendant, followed by injurious consequences which could not be deemed to have been contemplated when he executed the contract." (49 Am. Jur., Specific Performance, § 59, pp. 74–75.)

This general rule is followed in our State. " But even if the contract by its true interpretation imposes upon the defendant the legal obligation to pay the assessment, this is not decisive of the right of the plaintiff to relief by way of specific performance. This equitable remedy cannot be claimed as a matter of right. It is discretionary with the court to grant or withhold it in furtherance of justice, or to prevent injustice. Where by reason of circumstances attending the making of the con-

tract, * * * or where by reason of circumstances which have intervened between the making of the contract and the bringing of the action, the enforcement of the equitable remedy would be inequitable and produce results not within the intent or understanding of the parties when the bargain was made, and there has been no inexcusable *laches* or inattention by the party resisting performance, in not foreseeing and providing for contingencies which have subsequently arisen, the court may and will refuse to specifically enforce the contract and will leave the party to his legal remedy." (*Gotthelf* v. *Stranahan,* 138 N. Y. 345, 351–352.)

Micbar relies on two cases: (1) *Montkane Funds* v. *Ruff* (57 N. Y. S. 2d 208, affd. 269 App. Div. 1021). This was not an action for specific performance but an action for the return of the payment on contract. The court granted summary judgment in favor of the seller by which the purchaser lost his deposit. Micbar also relies on *Reich* v. *Rosenblatt* (279 App. Div. 561, affd. 303 N. Y. 891). No opinion was written in either court. The opinion of Mr. Justice BREITEL, which appears in the record on appeal, indicates how that case may be distinguished from the present case. It reads as follows: " Use of premises, contracted to be sold, in violation of an outstanding certificate of occupancy, does not render title unmarketable (see 175 A. L. R. annot. 1055, et seq. and cases cited therein). There has been no showing that it would be unfair or inequitable to require defendant to take title and to perform his part of the agreement. There was insufficient or no credible proof that any fraud or misrepresentation was committed in the inducement. Moreover, the written contract made provision as to noted violations. If a noted violation could not defeat the contract, certainly an unnoted violation should not have that effect."

For reasons which appear in the record, the Trial Judge did not find it would be unfair or inequitable to require the defendant to take title. In that case, there were tenants in the premises paying rent. Their uses of the premises were inconsistent with the permitted occupancy. A certificate of occupancy had been issued under which the five floors of the building could be used " for showrooms and offices ". According to the Court of Appeals' Reporter's statement, " at no time had the certificate of occupancy been mentioned as a basis for cancellation of the contract which, among other things," contained the usual provision requiring compliance with notes and notices of violation.

In both cases no violation had been recorded and in neither case is there any claim of fraud or misrepresentation. However, in the present case, a certificate of occupancy had been issued for a multiple dwelling. The alterations for which an application and plans and specifications had been filed changed the second-floor use from residential to commercial or business, and until a certificate of occupancy was issued the floor could not be occupied for any purpose. Further, the evidence is convincing, if not undisputed, that the objection based on the absence of a certificate of occupancy was raised before the original date set for closing and adjournments were had to enable Micbar to obtain a certificate of occupancy.

The court finds in this case that since the purchaser cannot occupy the altered premises for any purpose without a certificate of occupancy, it would be inequitable to decree specific performance.

With reference to the action by Truval to recover the payment on the contract, the court finds that the absence of a certificate of occupancy, not provided for in the contract, does not render the title unmarketable. (*Montkane Funds* v. *Ruff, supra; Reich* v. *Rosenblatt, supra;* Note, 175 A. L. R. 1055, 1060, 1068.)

Judgment is granted to Truval Realty Corp. dismissing the complaint in Action No. 1, without costs, and judgment is granted to Micbar Realty Corp. dismissing the complaint in Action No. 2, with costs. Settle judgments.