**In re NORTH BROADWAY FUNDING CORP., Bankrupt.**

**Bankruptcy No. 77–B–1716.**

United States Bankruptcy Court,
E. D. New York.

Sept. 11, 1980.

A. Carlos Cruz, Bayshore, N. Y., for Velasquez & Serrana.

Corwin & Frey, New York City, for Trustee.

## DECISION

C. ALBERT PARENTE, Chief Bankruptcy Judge.

This litigation arises from a motion for specific performance of a real estate contract, where the trustee, as the seller, refuses to perform due to changes in the mortgage market.

The salient facts are as follows:

North Broadway Funding Corp. (hereafter "bankrupt") was duly adjudged a bankrupt by this Court on November 14, 1978. The bankrupt was in the business of lending money and, in the ordinary course of its business, made loans to individuals. Such loans were secured by first and second mortgages on various parcels of property located in the New York metropolitan area.

Through foreclosure proceedings, the bankrupt became the owner of a one–fami-

ly house located at 21 Lantern Street, Huntington, New York. In the course of liquidating the bankrupt's estate, the Court issued an order on July 3, 1979, authorizing the trustee, pursuant to § 70(f) of the Bankruptcy Act to sell his right, title and interest in the property to Martin Velasquez and Benjamin Serrano (hereinafter "purchasers") for the sum of $31,000.

The parties entered into a real estate contract of sale dated August 28, 1979, which, by its own terms, was conditioned on the purchasers obtaining an FHA mortgage in the sum of $29,950. A closing date of April 2, 1980, was set. Shortly before this date, the trustee was advised that the transaction could be consummated if he were to pay fifteen points or approximately $4,500 to Vanguard Holding Corporation.

The Court takes notice that points are a fluctuating premium which is determined by the availability of mortgage money in the area. It is dispositively significant that the real estate contract, neither directly nor indirectly, stated that points would have to be paid to Vanguard Holding Corporation in consideration for the granting of the FHA mortgage.

Purchasers contend that they were ready, willing and able to close on the date agreed upon. The trustee, however, refused to proceed and advances the argument that the change in the mortgage market between August 1979 and April 1980 would cause a substantial burden on the estate if it were required to pay the fifteen points. Trustee further asserts that the high rate of points chargeable was not originally contemplated nor provided for in the contract. Consequently, performance should be excused at the option of either party.

Purchasers ask this Court to compel specific performance under the contract of sale.

These facts present to the Court the following issues:

(1) Whether the change in the mortgage market has rendered the contract of sale invalid.

(2) Whether specific performance should be decreed where the effect would be to compel the trustee to perform an obligation that is not embodied in the written contract.

## VALIDITY OF THE REAL ESTATE CONTRACT UNDER CHANGED CIRCUMSTANCES

The trustee contends that the parties are no longer able to proceed with the contract as originally contemplated and, therefore, the parties should be excused from their respective contractual obligations.

■ Contract law recognizes the Doctrine of Frustration of Purpose, the pertinent theory to the trustee's claim, whereby parties to a contract may be excused from further performance if: (1) unusual or unforeseeable events prevent such performance; and (2) where provisions could not have been readily made for what actually occurred. *Frenchman & Sweet, Inc. v. Philco Discount Corp.*, 21 A.D.2d 180, 249 N.Y. S.2d 611, 613 (4th Dept., 1964).

■ The courts in New York have held that in historically volatile markets, market prices are not, as a general rule, such unusual or unforeseeable events nor the type of contingency that could not have been provided for sufficient to excuse performance of a contract. In *Maple Farms, Inc. v. City School District of the City of Elmira*, 76 Misc.2d 1080, 352 N.Y.S.2d 784 (Chemung County, 1974), it was held that economic hardship alone was not enough to excuse performance and, therefore, the increase in the price of milk, which was not totally unexpected in view of the past history of milk prices, would not justify terminating the contract. Similarly, in light of the volatility in the mortgage market, the demand for such mortgage money and the availability of such funds with any attendant premiums cannot be argued to be the type of unanticipated contingency that should invoke the Doctrine of Frustration of Purpose.

Further, even if the cost of obtaining a mortgage is unusually high, as in this case, it cannot be said that such an expense renders performance senseless in a commercial

context. Therefore, in the event that § 2–615 of the Uniform Commercial Code (McKinney, 1964) could be extended to cover real estate contracts, the unanticipated burden on the obligated party caused by the scarcity of mortgage funds would not be one of such significance that it could be deemed a "basis assumption" which alters the essential nature of performance. See: Official Comment 4, Uniform Commercial Code § 2–615.

In sum, the trustee's contention that the change of circumstances has made it impossible for the parties to proceed as originally contemplated is not supported by case law, nor even a strained interpretation of "commercial impracticability" under the Uniform Commercial Code.

Significantly, the contract is silent with respect to liability of either party for the points involved. Moreover, paragraphs 22 and 23 of the real estate contract in question state:

22. All prior understandings and agreements between seller and purchaser are merged in this contract. It completely expresses their full agreement. It has been entered into after full investigation, neither party relying upon any statements made by anyone else that are not set forth in this contract.

23. This contract may not be changed or cancelled except in writing . . .

It is unclear why the trustee failed to allege that the estate is not liable for the points. Certain letters submitted by the moving party suggest that the third–party mortgagee, Vanguard Holding Corp., required the trustee–seller to pay said points. It is also suggested by the letters that the trustee understood this to be his obligation. In a letter dated April 2, 1980, from the buyer's attorney to Vanguard Holding Corp., counsel explained that seller's attorney had told him that they would be unable to close due to points involved and that it was doubtful whether this Court would permit him to pay the amount requested. The Court finds it unnecessary to its ultimate holding to determine whether the trustee's obligation for the points can be read into the contract. It is obliged, however, to assess the propriety of a court in compelling a party to perform under an unambiguous contract that professes to be the entire agreement, where the effect would be to impose a burden that is not embodied in its terms.

## SPECIFIC PERFORMANCE

■ A contract should be enforced according to its terms or not at all. This Court has no authority to compel a party to do something different from what he has agreed to do in his contract. Further, the agreement must be sufficiently clear and explicit such that the agreement may be understood from its own text unaided by extrinsic interpretation. *Crandall v. Smith*, 15 N.Y.S.2d 488, 172 Misc. 92 (Rensselaer County, 1939). Therefore, whatever reason plaintiffs and the mortgagee have for imposing this burden on the estate, its failure to incorporate same in the contract is fatal in this action for specific performance. While it is clear that equity will entertain an action for specific performance of a contract for the sale of realty, *Kroll v. Zimmerman*, 85 N.Y.S.2d 642, 274 App.Div. 1070 (2nd Dept., 1949), it is fundamental that in order to enable a court to decree specific performance of a contract, the contract must be clear, complete and reasonably certain. *Keystone Hardware Corp. v. Tague*, 246 N.Y. 79, 158 N.E. 27 (1927).

## EQUITABLE CONSIDERATIONS

■ In the exercise of its equitable powers, a court, even if it lacks authority to grant rescission of a contract, may find that the facts do not justify the granting of so drastic a remedy as a decree for specific performance. 5A Corbin on Contracts, §§ 1162 to 1164; *Kleinberg v. Ratett*, 252 N.Y. 236, 169 N.E. 289 (1929). One seeking this remedy must show that under the circumstances it would be an equitable and just remedy with the effect of rendering equity to both parties. *Hirschfeld v. Borchard Affiliations, Inc.*, 20 Misc.2d 680, 190 N.Y.S.2d 588 (New York County, 1959).

■ It must also be recognized that the Bankruptcy Court is essentially a court of equity and its proceedings are inherently proceedings in equity. It has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in the administration of the bankrupt's estate. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

In light of the factual posture of this case, the Court is convinced that the equities demand a denial of a decree for specific performance. The trustee was advised only days before the closing date that the mortgagee required the points to be paid by the estate and that only under those circumstances would the deal be consummated. This obligation would have the effect of eroding nearly one-third of the bankrupt's equity in the property and perhaps subject the trustee to liability for the wasting of the estate's assets.

The facts in this case are similar to those of *Gotthelf v. Stranahan*, 138 N.Y. 345, 34 N.E. 286 (1893), a non-bankruptcy case, where a prospective buyer sought to specifically enforce a contract for the purchase of land. The seller had refused to perform its obligations under the contract after he was notified that he was to pay certain unanticipated assessments for local improvements. In refusing specific performance on the theory that the seller should not bear an unanticipated burden that would gratuitously benefit the buyer, the New York Court of Appeals stated:

> Even if the contract by its true interpretation imposes upon the defendant the legal obligation to pay the assessment, this is not decisive of the right of the plaintiff to relief by way of specific performance. This equitable remedy cannot be claimed as a matter of right. It is discretionary with the court to grant or withhold it in furtherance of justice, or to prevent injustice. Where by reason of circumstances attending the making of the contract, such as fraud, accident, mistake, or where unconscionable advantage has been taken, or where, by reason of circumstances which have intervened between the making of the contract and the bringing of the action, the enforcement of the equitable remedy would be inequitable and produce results not within the intent or understanding of the parties when the bargain was made and there has been no inexcusable laches or inattention by the parties resisting performance, in not foreseeing and providing for contingencies which have subsequently arisen, the court may and will refuse to specifically enforce the contract, and will leave the party to his legal remedy.

*Gotthelf v. Stranahan*, supra at pp. 351–352, 34 N.E. at p. 288.

Therefore, aside from bankruptcy considerations, *Gotthelf*, supra, stands for the proposition that even though a change of circumstances may not void a contract, specific performance may still be withheld provided there has been no inexcusable laches or inattention by the resisting party.

With respect to the facts in this case, the Court finds that while the trustee could have limited his obligation for points in the contract, its omission does not rise to the level of inexcusable inattention. If anything, the inequity arose from the seller's failure to allocate the liability in the contract in the first instance. Hence, the equities involved do not weigh in favor of granting specific performance.

Finally, the purchasers have attempted to confer upon the Court's order authorizing the sale of said property a finality which the Court cannot accept. This Court granted the trustee the authority to sell the property under the terms of the contract upon the trustee's representation that $15,000 of equity would be realized and distributed to the creditors of the estate. While this Court takes heed of the impropriety of creating a situation where a bankruptcy court acts as a buffer between a trustee and any less than ideal commitments he may enter into, the Court embraces the reasoning of the Ninth Circuit Court of Appeals found in *Procter & Gamble Mfg. Co. v. Metcalf*, 173 F.2d 207 (9th Cir., 1949), a case of legal similarity, wherein the trustee who had petitioned for the sale decided

that he had not sufficiently protected the estate. The Court rules that "where there are even slight circumstances which suggest that there is unfairness to the estate in bankruptcy, a careful consideration should be had on review and [even] a confirmed sale should be set aside if necessary to rectify the situation". *Procter & Gamble Mfg. Co. v. Metcalf*, supra at p. 209.

In keeping with the findings and precepts of law here appertaining, the Court concludes that in the absence of a specific contractual dictate of assignability for the points involved, further supplemented by the inequity that would eventuate from an order granting specific performance, warrants a denial of plaintiff's motion.

Settle order.